DECISION
Relator, Arnold L. Pennington, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying his application for permanent total disability compensation, and ordering the commission to enter an order award ing said compensation.
This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12 (M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that relator had failed to establish that respo ndent-commission had abused its discretion in its decision.
Relator filed objections to the decision of the magistrate essentially rearguing issues already adequately addressed in that decision. For the reasons stated in the decision of the magis trate, the objections are overruled.
Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, the requested writ of mandamus is denie d.
Objections overruled; writ of mandamus denied.
PETREE and BROWN, JJ., concur.
 APPENDIX A IN MANDAMUS
Relator, Arnold L. Pennington, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation, and ordering the commission to issue an order finding that he is entitled to the requested compensation.
Findings of Fact:
1. Relator sustained a work-related injury on August 12, 1990, and his claim has been allowed as follows:
 * * * Cervical sprain/strain, thoracic sprain/strain, pain in right shoulder, pain in right arm and pain in right hand. Left posterolateral disc protrusion at C5-6 and right posterolateral disc protrusion at C6-7. Post surgical right vocal cord paresis. Somatoform pain disorder.
2. On May 4, 2000, relator filed an application for PTD compensation supported by the April 6, 2000 report of Dr. John H. Guluzian, who opined that relator was permanently and totally disabled as a result of his injury.
3. Relator was examined by Dr. John W. Cunningham, who issued a report dated July 19, 2000. In that report, Dr. Cunningham opined that relator had reached maximum medical improvement, assessed a twenty percent whole person impairment, and concluded as follows:
 * * * This individual is employable in sedentary work, light work and most medium work, with his only restriction being that when performing medium work as defined by the U.S. Dept. of Labor, he should not be asked to use his right arm above the level of the shoulder, and he should also not be asked to use his right arm overhead on more than an occasional basis. In my medical opinion this individual is employable in sus-tained remunerative employment in the sedentary, light and most medium work with the restrictions discussed above. This individual is not employable as a roofer as he was employed on the date of injury in question and as he was last employed by the above employer. The above expressed medical opinions are based on the medical information currently available to this physician and based upon the medical information which is objectively supported. * * *
Dr. Cunningham also completed an occupational activity assessment which he summarized in his report as follows:
 This individual has no restrictions in sitting, standing or walking. This individual has no restrictions in lifting, carrying, pushing, pulling or otherwise moving objects up to 20 lbs. with either upper extremity and/or both upper extremities provided this individual is not asked to use the right arm at or above the level of the shoulder on more than an occasional basis. This individual may lift, carry, push, pull or otherwise move objects 20-40 lbs. with both hands as long as the right upper arm remains belows [sic] shoulder level. This individual has no restrictions in negotiating stairs, may occasionally negotiate ladders and has no restrictions in the use of foot controls with either lower extremity. This individual has no restrictions in crouching, stooping, bending or kneeling. This individual has no restrictions with seizing, holding, grasping or turning objects with either hand including the right. This individual may occasionally reach to overhead with the right upper extremity, and has no restrictions with waist level, knee level or floor level reaching with either upper extremity.
4. Relator was also examined by Dr. Earl F. Greer concerning his psychological condition. Dr. Greer opined that relator had reached maximum medical improvement, assessed a fifteen percent impairment, recommended that psychological intervention continue and that any vocational readjustment recommended be coordinated with psychological intervention. Dr. Greer concluded that relator's psychological condition would not be expected to solely prevent him from returning to his former position of employment but that work would be expected to be therapeutic, enhancing his self-worth and that significant unstructured time would be psychologically unhealthy. Dr. Greer noted that motivation would be a significant factor.
5. An employability assessment was prepared by Howard L. Caston, Ph.D. Based upon the report of Dr. Guluzian, Dr. Caston concluded that there were no jobs relator could perform. However, based upon the reports of Drs. Greer and Cunningham, Dr. Caston concluded that relator could immediately perform the following jobs:
 Folding machine operator, inserting machine operator, sealing and canceling machine operator, odd piece checker, carver, salad maker, food assembler, laundry worker, sampler, brake adjuster, belt repairer, key cutter, electronics scale tester, gas meter mechanic, dispatcher radio, brush polisher, mainte-nance clerk, service clerk, assembler, engraver machine operator, parts cataloger.
Following appropriate academic remediation of brief skill training, Dr. Caston opined that relator could perform the following additional jobs: "Cashier, credit checker, receptionist, clerical support worker, order clerk." Dr. Caston found that relator's age of forty-one would not be a factor affecting his functional capacities, that, because of his eighth grade education in special education classes, he may have difficulty with any jobs that involve clerical activities, and that, given that his prior work has been physical and manual in nature, he has obtained few skills which would transfer to other jobs. Dr. Caston also noted that relator may have difficulty with remediation.
6. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on October 17, 2000, and was denied. The SHO relied upon the reports of Drs. Cunningham and Greer. Based upon the report of Dr. Cunningham, the SHO concluded that "claimant has the residual functional capacity to perform light to medium strength work." With regard to the nonmedical factors, the SHO concluded as follows:
 The claimant's age of 42 is found to be a very positive vocational factor. His 8th grade education and functional illiteracy is found to be a very negative vocational factor. Likewise his past work history is viewed as a very negative vocational factor, as it involved strictly unskilled heavy duty labor positions. While the claimant's non-medical disability factors on the whole are somewhat negative in terms of his potential for reemployment, they must be viewed in the context of his residual functional capacity, which is fairly substantial as indicated above. There are numerous unskilled light duty occupations in the current labor market, some of which require no reading, writing or math ability. Examples of such positions which the claimant could perform would include a small parts assembler, certain machine operator and attendant positions, road construction flagger, escort vehicle driver, and office light custodial worker. Given the claimant's young age and only moderate physical restirctions, even despite his functional illiteracy, he is not found to meet the test enunciated by the Supreme Court in the case of B.F. _Goodrich Co. v. I.C. (1995), 73 O.St.3d 525 of being a severely disabled worker who has no possibility for reemploy-ment.
 Therefore, based on the conclusions of Drs. Greer and Cunningham concerning the claimant's residual functional capacity, and the above analysis of his non-medical disability factors, it is found that the claimant is not permanently precluded from returning to any type of sustained remunera-tive employment.
7. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
Relator raises three arguments: Dr. Cunningham's report cannot be relied upon as some evidence that relator is capable of performing medium work when the restrictions Dr. Cunningham placed upon relator clearly take him outside the scope of medium work; the SHO adopted and utilized an incorrect standard of review in determining that relator was not entitled to PTD compensation; and the commission failed to adequately address the nonmedical vocational factors, particularly with regards to relator's age and his intellectual capacity. For the reasons that follow, this magistrate finds that relator is not entitled to a writ of mandamus.
First, relator contends that the commission's reliance on the report of Dr. Cunningham constitutes an abuse of discretion. Relator argues that Dr. Cunningham put limitations on his physical abilities, which are clearly outside the requirements of "medium work." Relator basis this argument on the fact that Dr. Cunningham made the statement within the body of his report that relator could perform medium work; however, when giving the physical restrictions, Dr. Cunningham gave restrictions which were outside the definition of "medium work" as such is defined by the United States Department of Labor. For the reasons that follow, relator's argument lacks merit.
The SHO concluded that relator was capable of performing light to medium strength work. "Light work" and "medium work" are defined at Ohio Adm. Code 4121-3-34(B)(2)(b) and (c) as follows:
 "Light work" means exerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.
 "Medium work" means exerting twenty to fifty pounds of force occasionally, and/or ten to twenty-five pounds of force frequently, and/or greater than negligible up to ten pounds of force constantly to move objects. Physical demand require-ments are in excess of those for light work.
Relator does not dispute that he is capable of performing "light work"; however, he contends that he is not capable of performing "medium work." This magistrate disagrees.
Dr. Cunningham opined that relator was unrestricted in his ability to lift, carry, push, pull or otherwise move objects weighing up to twenty pounds with either upper extremity and/or both upper extremities provided that relator was not asked to use his right arm at or above the level of the shoulder more than occasionally. Clearly, this places relator within the "light work" category. Dr. Cunningham further opined that relator could lift, carry, push, pull or otherwise move objects weighing up to forty pounds with both hands as long as the right arm remains below shoulder level for three to five hours a day, which means occasionally. These restrictions do place relator in the category of "medium work." Although relator argues that the commission can only rely on that portion of the doctor's report entitled "Opinion," this magistrate disagrees.
It should be remembered that the restrictions provided in Ohio Adm. Code4121-3-34 represent the upper limitations for each of the classifications of the physical demands of work. As such, "light work" could mean a job which required a person to lift up to twenty pounds of force occasionally and/or up to ten pounds of force frequently, but no higher. Similarly, "medium work" means exerting up to fifty pounds of force occasionally, and/or up to twenty-five pounds of force frequently, but no higher. Some "medium work" might only require that a person be able to lift up to thirty pounds, or up to forty pounds. Not all medium work requires that a worker lift fifty pounds. As such, Dr. Cunningham's restrictions did not confine relator to something less than "medium work." The fact that Dr. Cunningham discussed how the term "medium work" was defined by the United States Department of Labor is inconsequential. Looking at the actual restrictions which he placed upon relator, the commission could clearly see that relator was capable of performing some medium work and that is the exact conclusion the commission reached. As such, relator has not shown that the commission abused its discretion in this regard.
In his second argument, relator contends that the commission adopted a different standard of review. Relator contends that the commission focused on analysis of whether relator is "a severely disabled worker who has no possibility for reemployment," instead of whether relator is capable of performing some sustained remunerative employment. This magistrate disagrees with relator's argument.
Relator directs this court's attention to that portion of the commission's order where the commission cites State ex rel. B.F. Goodrich Co. v. Indus. Comm. (1995), 73 Ohio St.3d 525, and concludes that, given relator's young age and his only moderate physical restrictions, that even despite his functional illiteracy, he is not found to be a severely disabled worker who has no possibility for reemployment. In making this argument, relator completely ignores the rest of the commission's analysis.
The commission found relator's age of forty-two years to be a very positive vocational factor. The commission also found his eighth grade education and his functional illiteracy to be a very negative vocational factor. Further, relator's past work history was viewed as a very negative vocational factor. However, the commission went on to note that there are numerous unskilled light duty occupations in the current labor market, some of which require no reading, writing or math ability. The commission listed certain jobs including a small parts assembler, certain machine operator and attendant positions, road construction flagger, escort vehicle driver, and office light custodial worker. Then the commission noted that, given relator's young age and only moderate physical restrictions, even despite his functional illiteracy, he was not found to meet the test of B.F. Goodrich of being a severely disabled worker who has no possibility for reemployment.
In B.F. Goodrich, the record indicated that the claimant had not participated in any rehabilitation services offered by the commission. The record contained no indication that the claimant's lack of participation was based on a physician's medical advice or on a vocational evaluation that concluded that she was intellectually, psychologically or emotionally incapable of retraining. Absent such evidence, the implication was that the claimant simply chose not to avail herself of the opportunity to receive retraining and potential reemployment. After noting that the commission does not have the authority to force a claimant to participate in rehabilitation services, the court noted that it was disturbed by the prospect that a claimant may simply decide to forego retraining opportunities that would enhance their reemployment opportunities. At that point, the court noted that an award of PTD compensation should be reserved for the most severely disabled workers and should be allowed only where there is no possibility for reemployment. Neither the court's statement in B.F. Goodrich nor the commission's statement citing B.F. Goodrich in the present case indicates that either the court or the commission has redefined the definition of whether or not a claimant is permanently and totally disabled. Instead, the court has noted that claimants can be held accountable for their failure to make attempts to rehabilitate themselves and improve their chances for reemployment.
In the present case, the commission did not misapply B.F. Goodrich. Instead, the commission found that claimant was capable of performing light to medium duty work. The commission then concluded that despite relator's educational deficits and his prior work history, given his young age and his only moderate physical restrictions, he was capable of performing certain other sustained remunerative employment. Relator's contention that the commission utilized a different standard simply is not substantiated following a review of the commission's order.
Lastly, relator contends that the commission's analysis of the nonmedical factors constituted an abuse of discretion. This magistrate disagrees.
First, relator cites State ex rel. Hall v. Indus. Comm. (1997),80 Ohio St.3d 289, for the proposition that the Ohio Supreme Court has held that young age does not justify the denial of PTD compensation. In Hall, the commission had found that, because the injured worker was only fifty-three years old, he was young enough to make retraining and rehabilitation probable. The Ohio Supreme Court held that a claimant's age is immaterial if claimant lacks the intellectual capacity to learn a new job consistent with claimant's physical abilities. The court found further that it was nearly impossible to imagine a sedentary job which an illiterate person with a sixth grade education and a background in heavy labor would be qualified for. However, relator's own situation is distinguishable from the situation of the claimant in Hall.
In the present case, relator is physically capable of performing light and some medium strength work. The commission noted that there were numerous unskilled light duty occupations in the current labor market which require no reading, writing or math ability. The commission did not find that relator could or should undergo rehabilitation and retraining. Instead, the commission found that there were jobs which relator could perform. Those factors take relator's case outside the holding of Hall.
Relator then cites State ex rel. Blue v. Indus. Comm. (1997),79 Ohio St.3d 466, for the proposition that the Ohio Supreme Court has held that PTD compensation can never be granted solely because of age. According to relator, the reverse must also be true. However, in the present case, the commission did not deny relator's application for PTD compensation solely on the basis of relator's age. Instead, as has been stated previously, the commission found that, given relator's young age and his only moderate physical restrictions, even despite his functional illiteracy, there are numerous unskilled light duty occupations in the current labor market which he could perform. Relator has not demonstrated that the commission abused its discretion as the commission did not deny his application for PTD compensation solely on the basis of his young age.
Upon review of the commission's order, this magistrate finds that it complies with the requirements of Noll. The commission had some evidence upon which it relied to conclude that relator was capable of at least light duty work as well as some medium work. The commission also found that given his age, and his only moderate physical limitations, that despite his functional illiteracy and lack of transferable skills, there were numerous unskilled light duty occupations which relator could currently perform. Because this magistrate finds that the commission's order satisfies the requirements of Noll, there is no need to address relator's contention that he is entitled to relief pursuant to Gay.
Based on the foregoing, this magistrate finds that relator has not demonstrated that the commission abused its discretion by denying his application for PTD compensation and this court should deny relator's request for a writ of mandamus.