DECISION
{¶ 1} Newark Group Industries, Inc., ("Newark Group") filed this action in mandamus seeking a writ which compels the Industrial Commission of Ohio ("commission") to vacate its order granting permanent total disability ("PTD") compensation to Edward B. Sims.
{¶ 2} In accord with Loc.R. 12(M), the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate in turn issued a magistrate's decision which includes a recommendation that we deny the request for a writ. (Attached as Appendix A.)
{¶ 3} Newark Group has filed objections to the magistrate's decision. Counsel for the commission and counsel for Mr. Sims have each filed a memorandum in response. The case is now before the court for a full, independent review.
{¶ 4} Mr. Sims was injured on the job on three separate occasions. The last injury occurred in 1995 when he was sixty-one years of age. He had worked for Newark Group for forty-three years at that point.
{¶ 5} In 1999, Mr. Sims applied for PTD compensation. The application was initially denied by the commission, but then was granted following the granting of a writ of mandamus by this court in 2001. The staff hearing officer who granted PTD compensation wrote a long and thoughtful decision analyzing the positive and negative factors presented by Mr. Sims's situation.
{¶ 6} The magistrate of this court on the second mandamus action addressed those issues which Newark Group argued as the bases for issuing a writ and rejected the relief sought. The magistrate's decision is attached to our decision and need not be restated here. The magistrate carefully and correctly resolved the issues.
{¶ 7} As a result, we overrule the objections to the magistrate's decision. We adopt the findings of fact and conclusions of law contained in the magistrate's decision and deny the requested relief.
Objections overruled; writ denied.
BOWMAN and BRYANT, JJ., concur.
 (APPENDIX A) IN MANDAMUS
{¶ 1} In this original action, relator, Newark Group Industries, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting permanent total disability ("PTD") compensation to respondent Edward B. Sims, and to enter an order denying said compensation.
Findings of Fact:
{¶ 2} Edward B. Sims ("claimant") sustained three industrial injuries while employed as a laborer in a paper mill operated by relator, Newark Group Industries, Inc. ("Newark").
{¶ 3} Claimant's June 29, 1989 injury is allowed for "muscle contusion right posterior with nerve root pressure on anterior nerve supply," and is assigned claim number 89-31044. Claimant's January 31, 1994 injury is allowed for "open wound of left hand," and is assigned claim number 94-311705. The 1994 claim is a "medical only" claim in which no compensation has been paid. Claimant's February 14, 1995 injury is allowed for "compression fracture of L1 vertebra," and is assigned claim number 95-319079.
{¶ 4} Claimant was 61 years of age on the date of his last injury. He has not worked since that date.
{¶ 5} In early April 1995, Elaine Flanery, a rehabilitation case manager for the Ohio Bureau of Workers' Compensation ("bureau") set up an individualized rehabilitation plan for claimant. The plan included four to six weeks of physical therapy and a "job analysis" to be performed at Sport Works Physical Therapy group.
{¶ 6} On May 9, 1995, Flanery wrote to claimant's treating physician, Jill Schellhase, M.D., requesting that Dr. Schellhase provide a "physical capacity evaluation" in order to return claimant to a "light duty job" at Newark.
{¶ 7} On May 12, 1995, Dr. Schellhase wrote a "physical capacity evaluation" stating that claimant was to "initially return to work at 4 hours a day, 3 days a week in light duty job."
{¶ 8} On May 18, 1995, a Sport Works physical therapist wrote that he had observed "inappropriate illness behavior" and "symptom exaggeration" on the part of claimant. The physical therapist concluded that claimant's physical demand level was "sedentary-light."
{¶ 9} On October 31, 1995, claimant moved for R.C. 4123.56(B) wage loss compensation beginning September 16, 1995.
{¶ 10} On or about November 1, 1995, in response to a written query from the bureau, Dr. Schellhase stated that claimant's physical restrictions were "no lifting over 10 lbs., limit bending reaching."
{¶ 11} On November 13, 1995, Newark's vice present and general manager, C.R. Hemphill, wrote to claimant as follows:
 After extensive discussions with the Sports [sic] Works Physical Therapy Group, in Lancaster, Ohio, we have made a number of modifications to our tools and equipment to accommodate what we understand to be your restrictions involving bending, twisting, and lifting.
 These modifications are in place and it is our understanding that you are able to perform the work required at Ohio Paperboard Corp. Therefore, we are requesting that you report for work not later than Thursday, November 16, 1995. Please contact Janice Hardwick to arrange for re-entry into the work force and for scheduling information.
{¶ 12} On November 16, 1995, claimant's counsel wrote to Mr. Hemphill stating:
 I have discussed with Mr. Sims your letter of November 13, 1995. He appreciates Ohio Paperboard Corporation's efforts to modify the job to permit him to return to work. However, as a result of his present injuries and disabilities he applied for and has been placed on social security disability benefits.
 He therefore has terminated his efforts to return to work. Consequently, his request for wage loss benefits through his workers' compensation claim will be limited to the period of September 3, 1995 to October 27, 1995. * * *
{¶ 13} On November 28, 1995, the bureau referred claimant's wage loss motion to the commission for adjudication.
{¶ 14} Following a December 21, 1995 hearing, a district hearing officer ("DHO") issued an order granting wage loss compensation for the closed period September 4, 1995 to October 27, 1995. The DHO's order further states: "[T]he employer did not extend a job offer to the claimant until 11/13/95 and after this requested period of wage loss compensation."
{¶ 15} The DHO's order of December 21, 1995, was not administratively appealed.
{¶ 16} On May 18, 1999, claimant filed an application for PTD compensation.
{¶ 17} On August 10, 1999, claimant was examined by commission specialist, Timothy J. Fallon, M.D. Based upon the examination, Dr. Fallon opined that claimant "would have lifting restrictions based upon a light duty basis."
{¶ 18} Dr. Fallon also completed an Occupational Activity Assessment Report. On the report form, Dr. Fallon indicated that claimant can lift up to 20 pounds from "0-3 HRS," but cannot lift over 20 pounds.
{¶ 19} The commission requested an Employability Assessment Report from Brian L. Womer, a vocational expert. The Womer report, dated September 15, 1999, responds to the following query:
 Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, immediately and/or following appropriate academic remediation.
{¶ 20} Indicating acceptance of Dr. Fallon's report and responding to the above query, Womer wrote:
 The claimant could not return to his past work as it is described in the Dictionary of Occupational Titles. Jobs [sic] options would include small parts assembler, electronics worker, electrical accessories assembler, can filling and closing machine tender, assembly machine tender, injection molding machine tender, hand mounter, wire insulator. [Emphasis sic.]
{¶ 21} The Womer report further states:
III. EFFECTS OF OTHER EMPLOYABILITY FACTORS
 1. Question: How, if at all, do the claimant's age, education, work history or other factors (physical, psychological and sociological) effect his/her ability to meet basic demands of entry level occupations?
 Answer: Age: The claimant is considered to be a Person closely approaching advanced age per ICO criteria. Thus, the claimant's age would likely pose problems for vocational adjustment to new jobs or industries.
 Education: The claimant has a 9th grade education. He indicates that he can read and write, but not very well. He indicates that he can do basic math. Based on these factors the claimant would not have the requisite academic skills to perform many entry level light or sedentary jobs.
 Work History: The claimant has performed some work which is classified as skilled work and correlates with work temperaments including doing repetitive work, changing tasks often, doing precise work to close tolerances, and making judgments and decisions. He indicates that he has some supervisory experience and did some simple record keeping. However, all of this work has been in the pulp and paper industry, and thus the claimant would likely experience significant work adjustment issues if he were placed in other jobs or industries.
* * *
 2. Question: Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level Sedentary or Light jobs?
 Answer: Yes, based on work history factors. The claimant has performed some work which is classified as skilled work. While all of this work was in the pulp and paper industry, he does have some supervisory experience and did some simple record keeping.
* * *
B. WORK HISTORY:
 JOB *** SKILL STRENGTH DATES TITLE LEVEL LEVEL
Crew Member, *** Unskilled Medium 1994-1995
 Paper Mill Beater *** Unskilled Medium 1993-1994
 Operator Helper 1990-1991
 Beater *** Skilled Medium 1992-1993 Operator, Paper Mill
 Sample *** Skilled Light 1991-1992 Tester, Paper Mill
{¶ 22} Following a November 17, 1999 hearing, a staff hearing officer ("SHO") issued an order denying claimant's PTD application.
{¶ 23} On June 22, 2000, claimant filed in this court a mandamus action which was assigned case No. 00AP-688. The action was assigned to a magistrate who issued a decision. On February 23, 2001, this court entered its judgment adopting the magistrate's decision. This court ordered the commission to vacate its order denying the PTD application and, in a manner consistent with the magistrate's decision, enter a new order either granting or denying the PTD application.
{¶ 24} Following a June 19, 2001 hearing, another SHO issued an order granting the PTD application and awarding PTD compensation starting September 2, 1998. The SHO's order of June 19, 2001 states:
 The Staff Hearing Officer determines that the issue of whether the claimant is precluded from receiving PTD compensation because of a purported offer of modified employment is not a relevant issue because there are not sufficient circumstances present that would satisfy the requirements of Rule 4121-3-34. The SHO further finds that the decision to grant PTD is based upon the merits of the claimant's application, as so explained in the following findings.
 Claimant is a 68 year old male with a 9th grade education and a work history working in the same factory for 43 years. Among the duties that the claimant engaged in while working in this factory were crew member, papermill, beater operator helper, beater operator, winderman, and sample tester. The claimant indicates on his application that he can read and write but not well. He also indicates that he can do basic math. The claimant has had three industrial injuries. The first industrial injury took place on 06/29/1989 when, while working as a winderman, when he injured his lower back as a result of bending over. Treatment was minimal and entirely conservative. Only $200 in medical expenses were incurred as a result of this claim. The second industrial injury occurred on 01/31/1994 when, while working as a mill worker, when the claimant cut his left index finger. Treatment was entirely conservative and only $267 in medical expenses were incurred. The last industrial injury occurred on 02/14/1995. The claimant was working as a crew member when "he walked around mule and started to raise right leg, his left leg slipped on patch of ice, he fell landing on his back." Again, treatment in this claim has been entirely conservative. The claimant last worked on the date of the industrial injury, at which time he was 61 years of age (6 months shy of his 62nd birthday).
 Dr. Fallon, a physiatrist [sic], examined the claimant on 08/10/1999 on the permanent total impairment issue as it relates to the allowed conditions. Considering all of the allowed conditions, Dr. Fallon found that the claimant has a 15% permanent partial impairment. Dr. Fallon opined that the claimant would be able to return to certain types of sustained remunerative employment. The Occupational Activity Assessment chart filled out by Dr. Fallon indicates that the claimant is unrestricted with respect to sitting. He further indicates that the claimant could stand for up to 5 hours and could also walk for up to 5 hours. Claimant is also unrestricted with respect to climbing stairs, using foot controls, handling objects, and reaching overhead and at the waist level. Dr. Fallon also opined that the claimant can lift up to 20 lbs for up to 3 hours.
 The Staff Hearing Officer finds the report of Dr. Fallon to be persuasive and finds that the claimant has the residual functional capacity to engage in sedentary and light work. However, when considering the claimant's medical impairment in conjunction with his non-medical disability factors, the Staff Hearing Officer finds that the claimant is precluded from sustained remunerative employment and is, therefore, permanently and totally disabled.
 The claimant's age of 68 is found to be a negative factor since it is an advanced age. It is further noted that the claimant was 61 when he last worked. Any meaningful attempt to retrain the claimant for sedentary and light work has long since expired. Rehabilitation guidelines generally do not accept injured workers after the age of 55 on the theory that any acquisition of new job skills would be far more likely before the age of 55 than after. The finding that the claimant's age is a negative factor is based on the vocational assessment report of Brian Womer, dated 09/15/1999. He specifically states that the claimant's age would likely pose problems for vocational adjustment to new jobs or industries. The claimant's 9th grade education is also found to be a negative factor. The claimant's application indicates that he can read and write but not well. Under the Adjusted Worker Trait Profile, Mr. Womer indicates that the claimant's reasoning, math and language skills are at the 7th to 8th grade level. Based on these factors, the Staff Hearing Officer finds that the claimant does not have the requisite academic skills to perform many entry level light or sedentary jobs. This finding is also based on the aforementioned report of Mr. Womer. While the claimant's 43 year work history can be viewed as a person having a very stable work history, the flip side is that the entire working career was spent in the pulp and paper industry. That itself is found to be a negative factor and the Staff Hearing Officer finds that the claimant would likely experience significant work adjustment issues if he were placed in other jobs or industries. This finding is based on Mr. Womer's report. Thus, when considering all of the claimant's non-medical disability factors, the Staff Hearing Officer finds that the claimant's advanced age of 68, 9th grade education, and limited work history involving only the paper and pulp industry compels a finding that the claimant is precluded from returning to sedentary and light employment. Therefore, this compels a finding that the claimant is permanently and totally disabled.
{¶ 25} On September 19, 2001, relator, Newark Group Industries, Inc., filed this mandamus action.
Conclusions of Law:
{¶ 26} Three issues are presented: (1) whether the commission abused its discretion with respect to Newark's November 13, 1995 offer of modified employment; (2) whether the commission abused its discretion in failing to address whether claimant voluntarily removed himself from the workforce prior to becoming PTD; and (3) whether the commission's nonmedical analysis is defective for an alleged failure to consider claimant's ability to be retrained for sustained remunerative employment.
{¶ 27} The magistrate finds: (1) the commission did not abuse its discretion with respect to the Newark's November 13, 1995 offer of modified employment; (2) the commission did not abuse its discretion in failing to address whether claimant voluntarily removed himself from the workforce; and (3) the commission's nonmedical analysis is not defective for an alleged failure to consider claimant's ability to be retrained for sustained remunerative employment.
{¶ 28} Accordingly, as more fully explained below, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
{¶ 29} Turning to the first issue, Ohio Adm. Code 4121-3-34(D)(1)(e) states:
 If, after hearing, the adjudicator finds that the claimant is offered and refuses and/or fails to accept a bona fide offer of sustained remunerative employment that is made prior to the pre-hearing conference described in paragraph (C)(9) of this rule where there is a written job offer detailing the specific physical/mental requirements and duties of the job that are within the physical/mental capabilities of the claimant, the claimant shall be found not to be permanently and totally disabled.
{¶ 30} A commission finding that a PTD applicant has refused to accept a bona fide offer of sustained remunerative employment can bar PTD compensation. State ex rel. LTV Steel Co. v. Indus. Comm. (2002), 94 Ohio St.3d 467.
{¶ 31} On its face, Newark's November 13, 1995 letter fails to comply with Ohio Adm. Code 4121-3-34(D)(1)(e). The letter fails to detail the specific physical requirements and duties of the job that Newark intended to offer claimant. Accordingly, there was no evidence before the commission upon which it could have found that claimant failed to accept a bona fide offer of sustained remunerative employment.
{¶ 32} The SHO's order of June 19, 2001 states:
 The Staff Hearing Officer determines that the issue of whether the claimant is precluded from receiving PTD compensation because of a purported offer of modified employment is not a relevant issue because there are not sufficient circumstances present that would satisfy the requirements of Rule 4121-3-34. * * *
{¶ 33} Even if it can be said, as relator argues here, that the commission's explanation as to why the job offer fails to satisfy the requirements of Ohio Adm. Code 4121-3-34 violates State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, a remand to the commission for Noll compliance would be a vain act given that there is no evidence for the commission to weigh and that claimant is entitled to a finding that a bona fide job offer was not presented.
{¶ 34} Here, relator asserts that the DHO's order of December 1, 1995 "established the existence of a bona fide job offer, which finding is supported by the correspondence from Newark to Sims." (Reply brief at 2.) Relator seems to suggest that the doctrine of collateral estopel or res judicata bound the commission in its PTD determination to find that relator did make a bona fide offer of sustained remunerative employment on November 13, 1995. Relator's suggestion is incorrect.
{¶ 35} The DHO's order of December 1, 1995, awards wage loss compensation for the closed period of September 4, 1995 to October 27, 1995, and notes that claimant does not request wage loss compensation beyond the closed period. The DHO's order does not deny wage loss compensation based upon relator's November 13, 1995 job offer, nor is there a finding that the job offer was bona fide. In short, the orders' remarks regarding the November 13, 1995 job offer can have no binding effect upon the commission's subsequent PTD determination.
{¶ 36} Turning to the second issue, Ohio Adm. Code 4121-3-34(D)(1)(d) states:
 If, after hearing, the adjudicator finds that the claimant voluntarily removed himself from the work force, the claimant shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the claimant's medical condition at or near the time of removal/retirement.
{¶ 37} It is well-settled that the commission cannot abuse its discretion by failing to consider an issue that was not presented to it. State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78, 84; State ex rel. Jones Laughlin Steel Corp. v. Indus. Comm. (1985),29 Ohio App.3d 145, 148.
{¶ 38} It was the employer's burden to raise the issue before the commission of whether claimant voluntarily removed himself from the workforce and to produce evidence on that affirmative defense to the PTD claim. Quarto, supra at 83-84. See, also, State ex rel. Superior's Brand Meats, Inc. v. Indus. Comm. (1997), 78 Ohio St.3d 409, 411. It is claimant's burden to persuade the commission that there is a proximate causal relationship between his work-connected injuries and disability and to produce medical evidence to this effect. Quarto, supra at 83. The claimant's burden in this regard does not extend so far as to require him to raise, and then eliminate other possible causes of disability. Quarto, supra at 83.
{¶ 39} Here, there is no evidence that relator ever raised the issue with the commission as to whether claimant voluntarily abandoned the workforce. Perhaps most telling in this regard is a memorandum filed by relator's legal counsel with the commission with respect to the PTD application. This two-page memorandum captioned "Position Statement of Newark Group" argues that claimant failed "to make reasonable efforts to enhance his rehabilitation/reemployment potential." Newark argued that "a claimant's failure to participate in return-to-work efforts to the best of his/her ability undercuts their entitlement to permanent total disability." Nowhere in this memorandum is the issue of a voluntary abandonment of the workforce raised. There is no citation to Ohio Adm. Code 4121-3-34(D)(1)(d) or any case involving voluntary abandonment of the workforce.
{¶ 40} Unfortunately, we do not have transcripts of the PTD hearings. There is no indication that they were recorded. Thus, relator cannot show through a hearing transcript that the issue was raised.
{¶ 41} Moreover, while a potential voluntary abandonment issue was noted in the magistrate's decision in case No. 00AP-688, the magistrate did not recommend that this court instruct the commission to address a voluntary abandonment issue and this court, in adopting the magistrate's decision, did not instruct the commission to address a voluntary abandonment issue.
{¶ 42} Here, relator never directly asserts that it specifically raised voluntary abandonment of the workforce as a defense to the PTD application. In fact, relator asserts the following:
 The Industrial Commission Abused Its Discretion by Failing to Consider Sims' Effort or Lack Thereof, to Pursue Reasonable Avenues to Vocationally Rehabilitate Himself As Evidence Of Voluntary Removal From the Workforce. [Relator's brief at 9.]
{¶ 43} Clearly, an alleged lack of effort on the part of a claimant to vocationally rehabilitate does not automatically raise the issue for the employer of a voluntary abandonment of employment. In effect, relator is trying to argue that the commission had a duty to sua sponte address a voluntary abandonment issue because relator was pursuing the defense that claimant had allegedly failed to pursue rehabilitation. Relator's argument is incorrect, as Quarto, supra, makes clear. Relator simply failed to meet its burden of raising the issue before the commission.
{¶ 44} The third issue is whether the commission's nonmedical analysis is defective for an alleged failure to consider claimant's ability to be retrained for sustained remunerative employment.
{¶ 45} A portion of the SHO's order of June 19, 2001 states:
 The claimant's age of 68 is found to be a negative factor since it is an advanced age. It is further noted that the claimant was 61 when he last worked. Any meaningful attempt to retrain the claimant for sedentary and light work has long since expired. Rehabilitation guidelines generally do not accept injured workers after the age of 55 on the theory that any acquisition of new job skills would be far more likely before the age of 55 than after.
{¶ 46} In State ex rel. B.F. Goodrich Co. v. Indus. Comm. (1995),73 Ohio St.3d 525, Goodrich challenged in mandamus the commission's award of PTD compensation to a claimant who was 47 years old at the time of the PTD hearing. The claimant had an 11th grade education and no special training or skills. The Goodrich court wrote:
 * * * Goodrich accuses the commission of improperly ignoring the retraining issue in this case by focusing exclusively on claimant's current abilities without addressing the capacities that might be developed through retraining. As stated in State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167, 170, 31 OBR 369, 372, 509 N.E.2d 946-950:
 "The commission should consider any other factors that might be important to its determination of whether this specific claimant may return to the job market by utilizing her past employment skills, or those skills which may be reasonably developed." (Emphasis added.)
 Goodrich raises a compelling point under these facts for three reasons. First, claimant was only age forty-seven when permanent total disability was denied. Her age, therefore, does not offset the potential advantages of retraining. In many cases, retraining is a vain act, given the almost insurmountable vocational obstacle that advanced age poses to even the healthiest job seeker. That is not necessarily so in this instance.
 In a similar vein, claimant's educational level does not inherently suggest a lack of capacity for retraining. Claimant has an eleventh grade education. Concededly, from a prospective employer's standpoint, the lack of a high school diploma is what counts — it is immaterial whether claimant was one year away from a degree or six. Nevertheless, an eleventh grade education does not as readily suggest the absence of intellectual capacity that, for instance, a sixth-grade education does. Thus, while the absence of a high school diploma may be an impediment to re-employment, it may not pose the same obstacles to retraining. [Id. at 529.]
{¶ 47} Here, the commission actually did address the retraining issue. The commission did not simply confine itself to claimant's "current" abilities. The commission found claimant to be of advanced age on the hearing date and age 61 on the date of his last injury. The commission found that "[a]ny meaningful attempt to retrain the claimant for sedentary and light work has long since expired."
{¶ 48} As the Goodrich court makes clear, advanced age can make retraining efforts a vain act. Also, the claimant's educational level can suggest a lack of capacity for retraining. Here, claimant has a ninth grade education which does not suggest that at age 68, he has a capacity for retraining.
{¶ 49} Contrary to relator's suggestion, the commission's analysis regarding lack of capacity for retraining does not stand solely upon its notation that "[r]ehabilitation guidelines generally do not accept injured workers after the age 55." It was well within the commission's discretion to find that claimant's capacity for retraining was as nonexistent at age 61 when he was last injured as it is now at age 68. See, also, State ex rel. Wilson v. Indus. Comm. (1997), 80 Ohio St.3d 250
(claimant was only 37 years of age when injured; she was 47 years at the PTD hearing); State ex rel. Bowling v. Natl. Can Corp. (1996),77 Ohio St.3d 148 (claimant was only 47 years of age when injured; she was 66 years of age at the hearing).
{¶ 50} In short, the commission did not abuse its discretion with respect to the retraining issue.
{¶ 51} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.