DECISION
{¶ 1} Relator, Robert Saunders, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying him permanent total disability compensation and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate concluded the commission considered the allowed condition of anxiety disorder, and the commission did not abuse its discretion by failing to directly address an alleged "diminished intellectual capacity." Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator has filed objections to the magistrate's decision, rearguing those matters the magistrate adequately addressed. As the magistrate noted, the commission's order indicates it relied on the report of Dr. Brown and his opinion that relator's anxiety disorder does not prevent him from returning to his former position of employment. While relator may disagree with Dr. Brown's opinion, that disagreement does not render the commission's decision deficient. The commission properly could rely upon Dr. Brown's opinion without specifically addressing relator's contentions that the opinion is incorrect.
 {¶ 4} Moreover, while relator contends the commission failed to consider his diminished intellectual capacity when it addressed his failure to pursue literacy training, the magistrate properly noted the commission, at least indirectly, addressed relator's intellectual capacity by noting that his past ability to develop new job skills through on-the-job training would additionally support an ability to develop skills necessary to perform entry-level work. As the magistrate noted, "the commission's conclusion that relator has the intellectual capacity to develop new job skills" refutes his claim to diminished intellectual capacity. (Magistrate's Decision, ¶ 79.) Relator's objections are overruled.
 {¶ 5} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ denied.
LAZARUS and BROWN, JJ., concur.
 DECISION IN MANDAMUS {¶ 6} In this original action, relator, Robert Saunders, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 7} 1. Relator sustained an industrial injury on April 8, 1992, while employed as a welder for respondent O-Kan Marine Repair, Inc. The claim is allowed for: "sprain of thoracic, lumbar and trapezius right; sprain left ankle; anxiety disorder, acute chip fracture tip of left lateral malleolus, tendonitis right rotator cuff, and impingement of right rotator cuff," and is assigned claim number 92-46602.
 {¶ 8} 2. On September 27, 2001, relator filed an application for PTD compensation. In support, relator submitted a report, dated September 17, 2001, from James E. Lundeen, Sr., M.D., who opined that relator "is permanently and totally disabled as a direct result of the injuries in this claim."
 {¶ 9} 3. In further support of the application, relator submitted a report, dated August 2, 2001, from his treating psychiatrist Edmund J. Goold, M.D., who opined that relator "continues to be totally disabled because of his psychological condition of anxiety disorder."
 {¶ 10} 4. Under the "education" section of the PTD application, relator stated that he had completed the 12th grade at Gallia Academy High School in 1972. The application form posed three questions to the applicant: (1) "Can you read?"; (2) "Can you write?"; and (3) "Can you do basic math?" Given a choice of "yes," "no," and "not well," relator selected the "not well" response for all three queries.
 {¶ 11} 5. On December 20, 2001, relator was examined by commission specialist and psychiatrist Donald L. Brown, M.D., who issued a five-page report. In the report, Dr. Brown observed "[h]e seemed to be in the borderline or low average range of intelligence." Dr. Brown's report further states:
 {¶ 12} "DISCUSSION:
 {¶ 13} "Mr. Saunders indicates that because of his articulation difficulties and his academic difficulties that he started feeling excluded early in life and that throughout his life he has felt anxious, inadequate, insecure, and depressed. * * * I believe that this [industrial injury] has aggravated his pre-existing anxiety, insecurity, and depression and intensified his sense of inadequacy and alienation from others. He was treated with psychotherapy and medication and this has stabilized him. I feel that he is at a point of stabilization that his allowed condition of an anxiety disorder would not prevent him from returning to his former position of employment or other forms of sustained, remunerative employment and that would depend on his physical status. In actuality, his emotional symptoms would probably greatly improve should he be able to physically engage in some kind of sustained, remunerative employment.
 {¶ 14} "OPINION:
 {¶ 15} "In my opinion, Mr. Saunders has reached MMI with respect to his previously allowed anxiety disorder and can be considered permanent. He does need to stay on medication and to have visits with Dr. Goold to maintain him on the medication. Utilizing the Fourth Edition of the AMA Guides to the Determination of Permanent Impairment, I would rate him as having a Class III level of impairment. This is a moderate level of impairment. Referencing the percentages from the second edition in the fourth edition, I would rate his level of impairment at 25-30%."
 {¶ 16} 6. On December 24, 2001, relator was examined by commission specialist and orthopedist James Rutherford, M.D., who reported:
 {¶ 17} "* * * [H]e is capable of physical work activity based only on these orthopedic claim allowances and as a result of the orthopedic claim allowances of claim #92-46602 that he is limited to light duty work activities. * * *"
 {¶ 18} 7. The commission requested an employability assessment report from Mary L. Kolks, a vocational expert. The Kolks report, dated January 30, 2002, responds to the following query:
 {¶ 19} "Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, (A) immediately and/or; (B) following appropriate academic remediation."
 {¶ 20} Indicating acceptance of Dr. Rutherford's report and responding to the above query, Kolks wrote:
 {¶ 21} "[A] 814.382-010 Friction Welding Machine Welder
 {¶ 22} "706.684-074 Lock Assembler
 {¶ 23} "819.687-010 Weld Inspector
 {¶ 24} "599.685-090 Spray Machine Tender
 {¶ 25} "[B] The record indicates that the claimant Is functionally illiterate. This would Therefore not support an ability to Benefit from academic remediation. There are, however, inconsistencies. Please see question 3, under Section III below. Here are potential alternatives the claimant may be capable of performing after academic remediation:
 {¶ 26} "612.462-010 Multi-Operation-Machine Operator
 {¶ 27} "619.381-010 Steel Inspector
 {¶ 28} "622.684-010 Air Compressor Mechanic."
 {¶ 29} Kolks listed the same employment options for Dr. Brown's report. The Kolks report further states:
 {¶ 30} "III. EFFECTS OF OTHER EMPLOYABILITY FACTORS
 {¶ 31} "1. Question: How, if at all, do the claimant's age, education, work history or other factors (physical, psychological and sociological) effect his/her ability to met basic demands of entry level occupations?
 {¶ 32} "Answer: Age: 49 (younger person). The claimant would have a minimum of 16 remaining years of standard worklife expectancy with no mandatory retirement age. His age would not be seen as a factor that would preclude him from performing entry-level work.
 {¶ 33} "Education: 12th Grade (high school education and above). The claimant's education would be consistent with the ability to perform semiskilled and skilled types of work. This would not preclude the claimant from performing entry-level work.
 {¶ 34} "Work History: Consists of unskilled, semiskilled, and skilled work activity. The claimant's ability to perform work of a skilled nature, despite a lack of specific formal vocational training, indicates that he is capable of developing new job skills through on-the-job training and would support an ability to develop skills necessary to perform entry-level work.
 {¶ 35} "Other: The claimant states in the PTD application that he can read, write, and do basic math, but not well.
 {¶ 36} "* * *
 {¶ 37} "2. Question: Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level Sedentary or Light jobs?
 {¶ 38} "Answer: The claimant's age and past history of unskilled, semiskilled, and skilled work would be consistent with the development of skills necessary to perform entry-level sedentary/light work.
 {¶ 39} "3. Question: Are there significant issues regarding potential employability limitations or strengths that you wish to call to the SHO's attention?
 {¶ 40} "Answer: According to the Statement of Facts, the claimant is functionally illiterate, unable to read, write, or do basic math well. He was placed in special education classes in fifth grade. He went on to graduate high school. It is important to note that there are inconsistencies with the report that the claimant is functionally illiterate. He states in the PTD Application that he can read, write, and do basic math, but not well. Also, it appears that he has completed the PTD Application himself, which implies that he can, in fact, read and write well. * * *
 {¶ 41} "* * *
 {¶ 42} "B. WORK HISTORY:
 {¶ 43} "Job Title * * * Skill Strength Dates
 {¶ 44} Level Level
 {¶ 45} "Welder, Repair * * * Skilled Medium 73-92
 {¶ 46} "Torch Cutter * * * Skilled Heavy 73-92
 {¶ 47} "Forklift Driver * * * Semiskilled Medium 73-92
 {¶ 48} "Grocery Bagger * * * Unskilled Medium 1968"
 {¶ 49} 8. Following a March 21, 2002 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
 {¶ 50} "Claimant is a 49 year old male with a high school education and with a work history including experience as a bag boy/stocker and as a welder from 1973 to 1992. The claimant's industrial injury occurred on 04/08/1992 when, while working as a welder, he was injured as a result of carrying heavy steel plates. Treatment in this claim has been entirely conservative. No surgeries have been performed in this claim. The claimant last worked on 04/08/1992 at which time he was 39 years of age.
 {¶ 51} "Dr. Rutherford, an orthopedist, examined the claimant on 12/24/2001, regarding the permanent total impairment as it relates to the allowed orthopedic conditions of the claim. Dr. Rutherford opined that the claimant has a 7% whole person impairment due to the allowed orthopedic conditions of the claim. He specifically opines that the claimant is limited to sedentary and some light duty work. Dr. Rutherford opined that the claimant can lift up to 25 lbs. occasionally and can do frequent but not constant standing and walking. According to Dr. Rutherford, claimant can do occasional stooping and bending. Furthermore, the claimant can do climbing or crawling for work activity and can do no repetitive overhead work with his right upper extremity.
 {¶ 52} "Dr. Brown, a psychiatrist, examined the claimant on 12/20/2001, regarding the permanent total impairment as it relates to the allowed psychiatric condition of the claim. Although Dr. Brown opined that the claimant's impairment is at 25 to 30%, he felt that the claimant is capable of returning to his former position of employment from a psychiatric perspective.
 {¶ 53} "Based on the reports of Dr. Rutherford and Dr. Brown, which are found to be persuasive, the SHO finds that the claimant is capable of engaging in at least sedentary to light duty work. When considering the claimant's residual functional capacity in conjunction with his non-medical disability factors, the SHO finds that the claimant is not precluded from returning to sustained remunerative employment and is, therefore, not permanently and totally disabled.
 {¶ 54} "The SHO finds that the claimant's age of 49 is a positive factor regarding the claimant's potential for returning to the work force. A person of the claimant's age has at least 16 years of useful productive life and during which he can be retrained for sedentary and light employment. Furthermore, the claimant's work history is found to be a positive factor regarding the claimant's ability to return to sustained remunerative employment. The SHO notes that the claimant's work history consists of unskilled, semi-skilled, and skilled work activity. The claimant's job as a welder, despite a lack of specific formal vocational training, indicates that he is capable of developing new job skills through on the job training and would support an ability to develop skills necessary to perform entry level work. The above findings are based on the vocational assessment report by Mary Kolks, dated 01/30/2002. Despite the minimal physical impairment, the ability to return to his former position of employment on a psychiatric basis, the fact that treatment in the claim has been entirely conservative, the claimant contends that he is entitled to permanent total disability compensation on the basis of his functional illiteracy. The claimant asserts that his functional illiteracy, despite the high school education, prevents the claimant from returning to sustained remunerative employment. According to the claimant, the functional illiteracy is a factor which outweighs all other non-medical disability factors and, coupled with his physical and psychiatric conditions, prevents the claimant from returning to work. This argument is not well taken. What it boils down to is that the only thing that prevents the claimant from returning to work is his functional illiteracy.
 {¶ 55} "The SHO notes that the claimant last worked on 04/08/1992, at which time he was 39 years of age. While the claimant failed at an attempt at work hardening in 1993, there is nothing in the file which indicates that the claimant has attempted to alleviate his illiteracy by enrolling in a literacy or remedial reading program in the last 10 years. This claimant has never had surgery, is young, and has the residual functional capacity, from a physical and psychiatric standpoint, to return to work at the sedentary to light levels. The [State ex rel. Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757], [State ex rel. B.F. Goodrich Co. v. Indus. Comm. (1995),73 Ohio St.3d 525], and [State ex rel. Bowling v. Natl. Can Corp. (1996), 77 Ohio St.3d 148] cases stand for the proposition that a claimant has a responsibility to undergo appropriate and reasonable medical and/or vocational rehabilitation which will either enable a claimant to increase the residual functional capacity and/or obtain new marketable employment skills and thereby increase her [sic] potential employability. Furthermore, the [State ex rel. Wilson v. Indus. Comm. (1997), 80 Ohio St.3d 250] case stood for the proposition that it is not unreasonable to expect a claimant to participate in return to work efforts to the best of his or her abilities or to take the initiative to improve re-employment potential. The Wilson case also stated that permanent total disability compensation is `compensation of last resort.'
 {¶ 56} "The SHO finds that the claimant has not exhausted all reasonable avenues with respect to permanent total disability as there is no evidence on file that he attempted to alleviate the one factor which prevents his return to work in the sedentary to light range. The claimant has not fulfilled his responsibility to attempt to increase his chances of re-employment by entering a literacy program. As the Wilson case point[s], permanent total disability compensation is `compensation of last resort.' Therefore, the SHO finds that it would not be appropriate to grant permanent total disability in this case.
 {¶ 57} "Accordingly, the claimant's application for permanent total disability is denied."
 {¶ 58} 9. On June 21, 2002, relator, Robert Saunders, filed this mandamus action.
Conclusions of Law:
 {¶ 59} Relator presents two issues: (1) whether the commission considered the allowed condition "anxiety disorder"; and (2) whether the commission abused its discretion in failing to address relator's alleged "diminished intellectual capacity" when it determined that relator had failed to attempt to alleviate his alleged illiteracy.
 {¶ 60} The magistrate finds: (1) the commission did consider the allowed condition "anxiety disorder"; and (2) the commission did not abuse its discretion by failing to directly address an alleged "diminished intellectual capacity." Accordingly, as more fully explained below, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 {¶ 61} Turning to the first issue, it is well-settled that the commission can abuse its discretion by failing to consider all the allowed conditions claimed to be causing disability. State ex rel. Richardson v. Quarto Mining Co. (1995), 73 Ohio St.3d 358; State ex rel. Johnson v. Indus. Comm. (1988), 40 Ohio St.3d 384.
 {¶ 62} Citing to Richardson and Johnson, relator asserts that the commission "completely ignored the psychological condition allowed in this claim." (Relator's brief at 7.) Relator also asserts that the commission "failed to adequately consider the psychological condition." Id. Thereafter, relator asserts that the commission "made no attempt to address the severe limitation the psychological condition caused." (Relator's brief at 8.)
 {¶ 63} To begin, relator's reliance on Richardson and Johnson is misplaced. Here, the commission's order quite clearly indicates that the commission considered the allowed condition "anxiety disorder." In fact, the commission relied upon Dr. Brown's report of his evaluation of relator's "anxiety disorder." In short, relator's contention lacks merit.
 {¶ 64} Nevertheless, in his reply brief, relator states:
 {¶ 65} "* * * Claimant does not have an `issue' with Dr. Brown's report, but rather the way it was analyzed by the Industrial Commission. More correctly, perhaps, the lack of analysis from the Industrial Commission was the reason the mandamus complaint was filed." (Emphasis sic.) Id. at 2.
 {¶ 66} While the above-quoted portion of the reply brief seems to present an attempt to alter the issue as originally presented in the initial brief, it is not clear to this magistrate what issue relator intends to present in the reply. There is no clear explanation from relator as to how the commission's order demonstrates an abuse of discretion with respect to its reliance on Dr. Brown's report.
 {¶ 67} As the order indicates, the commission relied particularly upon Dr. Brown's opinion that the "anxiety disorder" does not prevent a return to the former position of employment. The commission then viewed the reports of Drs. Brown and Rutherford together to conclude that relator is "capable of engaging in at least sedentary to light duty work." There is no apparent abuse of discretion in this regard, and certainly none that relator has pointed out in this action.
 {¶ 68} The second issue involves relator's claim that the commission abused its discretion by allegedly failing to address "diminished intellectual capacity" when it determined that relator had failed to attempt to alleviate his alleged illiteracy. Relator claims that the commission has a duty to address "diminished intellectual capacity" as a factor required by State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167 ("Stephenson factor"). Relator seems to rely on State ex rel. Hall v. Indus. Comm. (1997), 80 Ohio St.3d 289, for the proposition that the alleged "diminished intellectual capacity" is a Stephenson factor that the commission has a duty to address. (Relator's brief at 9-11.)
 {¶ 69} In Hall, the commission denied the claimant's PTD application stating:
 {¶ 70} "* * * The claimant's education (completed the 6th grade and is functionally illiterate) and his previous work history (laborer, timber cutter, industrial production worker, and construction) would be barriers to rehabilitation and retraining to more sedentary employment. However, the claimant is only 53 years old and * * * young enough * * * to make retraining and rehabilitation a probability. * * *" Id. at 291.
 {¶ 71} The Hall court found the commission's non-medical analysis to be flawed, stating:
 {¶ 72} "* * * The commission's decision was based on claimant's age, a factor which the commission felt made claimant amenable to retraining. Age, however, is immaterial if claimant lacks the intellectual capacity to learn. The claimant has a sixth-grade education and is illiterate. His work history consists entirely of extremely heavy physical labor that is now well beyond his physical capacities. There is no explanation as to how or for what jobs claimant is able to retrain." Id. at 292.
 {¶ 73} Contrary to relator's suggestion here, the Hall case does not stand for the proposition that the commission is always obligated to address any evidence of so-called diminished intellectual capacity in its non-medical analysis. In Hall, it was the commission's order that found the claimant to be "functionally illiterate." The Hall court criticized the logic of the commission's conclusion that the claimant's age alone can overcome the illiteracy problem which may be indicative that the claimant lacks the capacity to learn.
 {¶ 74} Here, the commission relied upon the report of Dr. Brown. In that report, Dr. Brown observed that relator "seemed to be in the borderline or low average range of intelligence." The commission also relied in part upon the Kolks vocational report wherein Kolks states "the record indicates that the claimant is functionally illiterate. This would therefore not support an ability to benefit from academic remediation."
 {¶ 75} According to relator, the commission's reliance upon the report of Dr. Brown and the Kolks vocational report containing the above noted statements placed upon the commission a duty to address an alleged "diminished intellectual capacity" that might explain or excuse relator's failure to attempt to alleviate his alleged illiteracy. The magistrate disagrees.
 {¶ 76} Here, the commission addressed, at least indirectly, relator's intellectual capacity in the following paragraph of the commission's order:
 {¶ 77} "* * * The claimant's job as a welder, despite a lack of specific formal vocational training, indicates that he is capable of developing new job skills through on the job training and would support an ability to develop skills necessary to perform entry level work. The above findings are based on the vocational assessment report by Mary Kolks[.] * * *"
 {¶ 78} Clearly, intellectual capacity can be determined from the claimant's work history. Vocational experts frequently do this. Intellectual capacity need not be based upon the observation of a psychiatrist or even upon testing. It is well within the commission's fact-finding discretion to determine how it can determine a claimant's intellectual abilities.
 {¶ 79} Moreover, the Kolks report supports the commission's conclusion that relator has the intellectual capacity to develop new job skills, thus refuting relator's claim to "diminished intellectual capacity."
 {¶ 80} The magistrate further notes that Dr. Brown did not opine in any way that the "borderline or low average intelligence" that he observed would prohibit relator from improving his literacy. Moreover, relator himself concedes in this PTD application that he has some ability to read and write.
 {¶ 81} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.