DECISION
Steelcraft Manufacturing Co. ("Steelcraft") filed this action in mandamus seeking a writ which compels the Industrial Commission of Ohio ("commission") to vacate its award of permanent total disability ("PTD") compensation to David Pennington.
In accord with Loc.R. 12(M), this case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes a recommendation that we refuse the requested relief.
Counsel for Steelcraft has filed objections to the magistrate's decision. Counsel for David Pennington and counsel for the commission have each filed a memorandum in response. The case is now before the court for a full, independent review.
David Pennington was employed as a sheet metal worker when he seriously injured his back. His workers' compensation claim has been recognized for lumbar disc displacement, lumbar neuritis/radiculities, lumbar nerve root causing severe paresthesia of the left leg, and spondylolisthesis. All his past employment was semi-skilled, heavy labor. He is reported as a high school graduate, although his general education development testing found him to function at a first to third grade level. None of his occupational skills are transferable to sedentary employment.
Steelcraft argues that no evidence supports the commission's finding that Mr. Pennington is entitled to PTD compensation. The commission based its decision on the reports of Arnold R. Penix, M.D.; James J. Lutz, M.D.; and J. Michael Shane, M.A., C.D.M.S.
The magistrate removed from the "some evidence" consideration the report of Dr. Penix because Dr. Penix refers to degenerative disc disease at L4-5 and spondylolisthesis at L5-S1 as the recognized conditions. Since spondylolisthesis commonly involves the forward displacement of the fifth lumbar vertebra, the notation about the specific location of disc displacement does not harm the evidentiary value of the report.
The reference to "degenerative" disc disease, although not technically in accord with the recognized conditions, does not affect the quality of the conclusion reached by Dr. Penix. However, a specific reference to lumbar disc displacement, lumbar neuritis/radiculites and paresthesis resulting from inflamation or disease of the lumbar nerve root would have been preferable.
In short, as a medical, the report of Dr. Penix has some limited value, but would not support an award of PTD compensation in and of itself.
Dr. Lutz provided a more detailed analysis of Mr. Pennington's medical condition and found him capable of only sedentary work in which Mr. Pennington could sit or stand for pain relief whenever desired.
J. Michael Shane did the testing which demonstrated Mr. Pennington's educational limitations and lack of other aptitudes except manual dexterity.
Combing the reports of Dr. Lutz and Michael Shane, the commission was well within its discretion to find Mr. Pennington to be entitled to PTD compensation. Certainly, some evidence indicates that he may not be capable of sustained remunerative employment.
The objections to the magistrate's decision are overruled. We adopt the findings of fact and conclusions of law contained in the magistrate's decision and deny the request for relief.
Objections overruled; writ denied.
PETREE and BRYANT, JJ., concur.
 APPENDIX A
Relator, Steelcraft Manufacturing Co., filed this original action asking the court to compel respondent Industrial Commission of Ohio ("commission") to vacate its order awarding compensation for permanent total disability ("PTD") and to issue an order that denies compensation.
Findings of Fact:
1. In March 1995, David Pennington ("claimant") sustained a work-related injury, and his workers' compensation claim was allowed for lumbar disc displacement, lumbar neuritis/radiculitis, lumbar nerve root causing severe paresthesia of the left leg, and spondylolisthesis.
2. According to the employer's records, claimant participated in rehabilitation and returned to work in January 1996. However, based on persistent complaints of the low back and lower extremity, he ceased working in June 1996. In March 1997, claimant refused further rehabilitation services.
3. Claimant sought treatment from Arnold Penix, M.D., who referred him to John Roberts, M.D., for a surgical consultation. Dr. Roberts recommended surgery to remove a damaged disc and fuse the vertebrae to alleviate complaints of pain. Claimant scheduled the surgery but refused it on the planned day.
4. In May 1998, Dr. Penix provided a report regarding claimant's condition, as follows in its entirety.
 David Pennington has been under my care since 09/27/96. He is a thirty-eight year old sheet worker who sustained an injury to his low back in April of 1995. He has been diagnosed with degenerative disc disease at L4-5 and spondylolisthesis at L5-S1. He has been treated with nonoperative measures and at the present time remains persistently symptomatic. He has been found not to be a good surgical candidate and at the present time his condition has reached permanence. He requires pain medication and is unable to increase his activity level.
 It is my opinion that due to his limited job skills, lack of higher education and experience outside of the heavy labor type job, he is permanently and totally disabled.
5. In February 2000, claimant was examined by Malcolm Meyn, M.D., who noted that claimant was scheduled for surgery but backed out at the last minute, which usually indicates a patient who had been exaggerating his symptoms. However, in this case, Dr. Meyn found objective evidence of ongoing pathology in the lower back evidenced by x-rays, MRI, sensory deficit consistent with those studies, motor weakness, and limited ranges of motion. Dr. Meyn set forth detailed examination findings and agreed with claimant's decision not to have surgery, explaining the reasons at length. With regard to further rehabilitation, Dr. Meyn opined that it would not be successful:
 * * * [I]t is my opinion that rehabilitative efforts will not be successful. The reason for this opinion is that one, this is an industrial accident, which in and of itself carries a very poor prognosis for return to work. After one year of being off work, only 2% of patients ever return to gainful employment. Secondly, Mr. Pennington has been accepted by Social Security and is currently receiving benefits. It has been my experience with patients who go on Social Security that they have less reason to return to work and, thus, are more likely to be determined permanently and totally disabled. Thirdly, Mr. Pennington seems rather satisfied with his present condition and did not have the affect of someone who was discouraged, depressed or anxious about the future. He seemed to be very content in his role as a patient. Based on my experience, patients who reach this psychological state rarely rise above it to return to gainful employment.
With regard to disability, Dr. Meyn opined:
 * * * Mr. Pennington should be considered totally disabled and unable to return to gainful employment of any type. This is based mainly on the fact that he is unable to sit or stand for any length of time. He also cannot ambulate for more than a block or two before having to stop.
 It is my opinion that Mr. Pennington's total disability is entirely related to the physical conditions allowed in his workers' compensation claim with respect to his lower back. It is my opinion that the alcohol abuse, drug abuse, dysthymia and adjustment disorders all contribute psychologically to his acceptance of his condition and the exploitation of the benefits due him. * * *
6. In August 2001, the PTD application was heard by the commission, which granted it:
 The Staff Hearing Officer finds that claimant's condition has become permanent and that he is unable to return to this former position of employment as a die-setter/line setup due to the allowed conditions in the claim.
 Dr. Penix, claimant's orthopedic surgeon, opined in a report dated 05/11/98 that the claimant is unable to engage in sustained remunerative employment based on the allowed conditions in the claim.
 Dr. Lutz, occupational medicine specialist, examined the claimant at the request of the Industrial Commission on 04/04/00. Dr. Lutz opined that the claimant is capable of performing only sedentary-type work with the freedom to sit or stand as desired for comfort. Dr. Lutz opined that the claimant is restricted to sitting, standing and walking up to only 0-3 hours each in an eight hour workday. Dr. Lutz restricted the claimant's lifting to up to 10 pounds for 0-3 hours in an eight hour workday. Dr. Lutz further opined that the claimant should not crouch, stoop, bend or kneel at all. Dr. Lutz also opined that the claimant should not reach at floor level at all.
 The Staff Hearing Officer finds that the claimant is a younger individual of 43 years of age with a 12th grade education. The Staff Hearing Officer finds that the claimant's work experience includes jobs as a die setter/line setup and laborer on assembly line.
 The Staff Hearing Officer finds that claimant's work experience does not provide him with any transferable skills to become re-employed given the physical restrictions due to the industrial injury herein.
 Mr. J. Michael Shane, vocational expert for the Industrial Commission, opined in a report dated 07/05/00 that claimant's work history of just one job in 20 years means that the claimant could face initial adjustment problems in a new work situation. Mr. Shane, in claimant's adjusted worker trait profile opined that the claimant rated below average in numerous categories including general learning ability, verbal aptitude, numerical aptitude, clerical perception, motor coordination and eye/hand coordination.
 The Staff Hearing Officer finds that given the claimant's lack of transferable work skills and the severe medical restrictions due to the allowed conditions in this claim, the claimant is unable to engage in sustained remunerative employment and is permanently [and] totally disabled.
Conclusions of Law:
The employer argues that the commission abused its discretion in awarding PTD compensation. Numerous judicial decisions set forth the principles governing this court's review of commission orders, including State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203; State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167; State ex rel. Ellis v. McGraw Edison Co. (1993), 66 Ohio St.3d 92; State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373; State ex rel. Shields v. Indus. Comm. (1996), 74 Ohio St.3d 264; State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139; State ex rel. Bowling v. Natl. Can Corp. (1996), 77 Ohio St.3d 148; State ex rel. B.F. Goodrich Co. v. Indus. Comm. (1995), 73 Ohio St.3d 525; and State ex rel. Wilson v. Indus. Comm. (1997), 80 Ohio St.3d 250.
In regard to the nonmedical factors, the magistrate acknowledges that the commission may deny PTD where a claimant's lack of current skills is attributable to the claimant's failure to make reasonable efforts to seek training. E.g., Wilson. However, possessing skills or the vocational capacity to develop skills is not a significant asset when claimant has extremely limited physical capacities for sustained remunerative employment. See State ex rel. Mann v. Indus. Comm. (1998),80 Ohio St.3d 656, 659; State ex rel. McComas v. Indus. Comm. (1997),77 Ohio St.3d 362.
The commission has broad discretion to evaluate and weigh the evidence. For example, the age of fifty-two may be viewed as youthful and an asset, but the commission is not required to interpret it that way. See Ellis, supra. Similarly, staying at one job for many years may be viewed as an asset (showing steadiness and dependability) or as a disadvantage (showing narrowness of experience and skills). Ewart, supra. In short, the commission may give substantial weight to a factor that the court does not view as particularly compelling. State ex rel. King v. Trimble (1996), 77 Ohio St.3d 58, 63. In mandamus, this court must uphold an order supported by "some evidence," regardless of whether the record includes other evidence, greater in quantity and/or quality, that supports the contrary decision. Pass, supra.
Medical evidence is also subject to interpretation. For example, where a physician states on a checklist that the claimant can sit for "0-3" hours, the commission may emphasize the maximum or the minimum part of the range. See, e.g., State ex rel. Wical v. Indus. Comm. (Oct. 27, 2000), Franklin App. No. 00AP-501 (Magistrate's Decision at 10), adopted (Jan. 25, 2001), unreported (Memorandum Decision).
However, some medical reports are excluded from evidentiary consideration. When a physician has based the medical opinion on a nonallowed condition, even in part, the report cannot constitute "some evidence" to support an award. E.g., Shields, supra. Similarly, when a medical expert expresses a disability opinion based on nonmedical factors such as age and employment history, that opinion is disqualified from evidentiary consideration. Shields, supra; State ex rel. Catholic Diocese of Cleveland v. Indus. Comm. (1994), 69 Ohio St.3d 560. When it is clear, however, from the doctor's report that he or she rendered a medical opinion based solely on the allowed conditions, the commission may rely on the medical opinion while disregarding any superfluous vocational opinion offered by the doctor. See, generally, Catholic Diocese.
In the present action, there was evidence regarding rehabilitation efforts and a refusal of further rehabilitation. However, the magistrate does not find evidence that imposed a legal duty on the commission to conclude that rehabilitation was feasible and could have returned claimant to sustained remunerative employment. There was medical evidence that claimant's physical capacities are so limited that the range of sedentary jobs he could perform is extremely narrow, making it less likely that training would return him to work. Also, his physical capacities may be viewed as so minimal as to preclude sustained attendance at training classes. In regard to evidence indicating that claimant could engage in more physical rehabilitation or could attempt surgery, the magistrate concludes, based on the diversity of the medical and nonmedical evidence, that the commission was not required, as a matter of law, to conclude that claimant was voluntarily refusing to engage in physical rehabilitation that would return him to work.
The magistrate recognizes that the commission could have relied heavily on claimant's age and high school education as assets, and might have interpreted the medical evidence as permitting claimant to perform a narrow range of duties on a part-time basis. The commission was not required to weigh the evidence in that manner, however. Here, Dr. Lutz stated that claimant could sit and stand for "0-3" hours each day, but did not check the option that claimant could sit and stand "not at all," indicating that claimant could perform these activities for somewhere between fifteen minutes and three hours. Also, Dr. Meyn stated that claimant is unable to sit or stand "for any length of time," which would support a focus on the minimum end of Dr. Lutz's range. Based on the evidence, the commission could conclude that, while claimant had a residual functional capacity for work, his capacities for sitting and standing were so minimal that, combining all the factors, sustained remunerative employment was precluded. See, generally, State ex rel. Libecap v. Indus Comm. (Sept. 5, 1996), Franklin App. No. 96AP-29, affirmed (1998), 83 Ohio St.3d 178.
In regard to the report of Dr. Penix, the magistrate concludes that it did not provide "some evidence" on which the commission could rely. Dr. Penix not only relied in part on a nonallowed condition (degenerative disc disease at L4-5) but he relied on nonmedical factors in rendering his opinion. However, because the medical report of Dr. Lutz provided ample support for the commission's determination of claimant's severe limitations due to the allowed conditions, a writ is not warranted. See State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78.
The magistrate concludes that relator has not met its burden of proof in the present action. The evidence was susceptible of interpretation, and the commission was within its discretion to conclude that claimant is unable to perform sustained remunerative employment. The commission cited "some evidence" in support of its decision and provided an adequate explanation of its rationale. Accordingly, the magistrate concludes that the court should deny the requested writ.