{¶ 1} Relator, Betty L. Davis, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate has examined the evidence and rendered a decision which includes findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that the commission had abused its discretion insofar as the commission's order denying her PTD application excluded consideration of a 1986 claim that was identified in relator's PTD application. The magistrate further found that the commission's order was based in part upon a vocational report which was equivocal and, thus, did not constitute "some evidence" pursuant to State ex. rel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649. The magistrate accordingly concluded that this court should issue a writ of mandamus ordering respondent to vacate its order, eliminate the disputed vocational report from further evidentiary consideration, and address the identified 1986 industrial claim before entering a new order adjudicating relator's PTD application.
 {¶ 3} No objections have been filed to the magistrate's decision. The matter is now before this court for a full, independent review.
 {¶ 4} Upon a through review of the record, this court finds no error of law or fact in the magistrate's decision. This court therefore adopts the magistrate's decision as its own, including the findings of fact and conclusions of law therein, and a writ of mandamus shall issue ordering respondent to reconsider relator's PTD application according to the findings set forth in the magistrate's decision.
Writ of mandamus granted.
PETREE, P.J., and KLATT, J., concur.
Justice J. Craig Wright, retired, of the Ohio Supreme Court, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 IN MANDAMUS {¶ 5} In this original action, relator, Betty L. Davis, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 6} 1. Relator has two industrial claims arising out of her employment as a "bindery worker" for respondent Hammer Graphics, Inc., a state-fund employer.
 {¶ 7} 2. Claim number 86-46400 arose out of an injury occurring June 11, 1986. There is a dispute between the parties to this action as to what this claim is allowed for. A commission order denying a previously filed PTD application indicates that claim number 86-46400 has been allowed for "acute lumbosacral strain." However, in this action, relator claims that claim number 86-46400 is allowed for "lumbosacral sprain and sprain of the thoracic region," based upon several documents of record. In this action, this court need not resolve the dispute regarding the allowed conditions of the 1986 claim. That dispute can be resolved by the commission following the termination of this action.
 {¶ 8} 3. On June 19, 1987, relator sustained her second industrial injury which is assigned claim number 87-15402. The 1987 claim is allowed for "cervical sprain with radiculitis; lumbar sprain with radiculitis right extremities; radiculitis upper and lower extremities; extradural defect of C5-6 on right; narrowing of intervertebral space; depression." There is no dispute here about the allowances for the 1987 claim.
 {¶ 9} 4. On June 12, 2000, relator filed her third application for PTD compensation. The application asks the applicant to list all industrial claims that the applicant wants the commission to consider. Relator listed both claim numbers along with their corresponding injury dates.
 {¶ 10} 5. In support of her PTD application, relator submitted a report, dated April 10, 2000, from orthopedic surgeon Won G. Song, M.D., who stated that he had been treating relator since October 15, 1987 for "her neck and low back injury." Dr. Song listed only claim number 87-15402 in his report. In his report, Dr. Song noted that "[l]ately, [relator] has also been developing adhesive capsulitis of the left shoulder." Dr. Song opined:
 {¶ 11} "In my opinion, basically, the patient is unable and will be unable to participate [in] any type of gainful activity in the future considering her chronic neck and low back problem, plus depression and left shoulder problem."
 {¶ 12} 6. In further support of her PTD application, relator submitted a report, dated April 10, 2000, from Mark A. Smith, M.D., who indicated that relator has been under his care since November 1998, "due to depression." Dr. Smith opined that relator "is incapable of performing sustained remunerative employment."
 {¶ 13} 7. On April 4, 2001, relator was examined by commission specialist Dr. Daniel E. Braunlin. Dr. Braunlin examined relator only for the physical conditions of the 1987 claim. Dr. Braunlin does not list or mention the 1986 claim in his report. Based upon his physical examination, Dr. Braunlin opined that relator "has the potential to return to sedentary work at this time."
 {¶ 14} 8. On April 3, 2001, relator was examined by commission specialist and psychologist Earl F. Greer, Ed.D. Mr. Greer opined:
 {¶ 15} "The degree of emotional impairment from her industrial accident on 6-19-1987 would currently not be expected to solely prevent her from returning to her former position of employment. Work would be expected to be therapeutic, enhancing self-worth; and with significant unstructured time psychologically unhealthy. Motivation is expected to be a significant factor. Any vocational readjustment is recommended to be coordinated with psychological intervention."
 {¶ 16} 9. The commission requested an employability assessment report from Julie Morrissey, a vocational expert. The Morrissey employability assessment report, dated May 12, 2001, responds to the following query:
 {¶ 17} "Based on your separate consideration of reviewed medical and psychological options regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, (A) immediately and/or (B) following appropriate academic remediation or brief skill training."
 {¶ 18} Indicating acceptance of Dr. Braunlin's report and responding to the above query, Morrissey wrote: "[#3] Lock Assembler; Lens Inserter; Bench Hand; Semi-conductor Assembler."
 {¶ 19} Indicating acceptance of Mr. Greer's report and responding to the above query, Morrissey wrote: "Former job of Bindery Worker and Same as #[3]."
 {¶ 20} 10. Apparently, Morrissey was later hired by the claimant to perform a "vocational evaluation." She rendered a report, dated June 4, 2001, on relator's behalf. Her June 4, 2001 report indicates that she reviewed the same four medical reports that she reviewed for her employability assessment report to the commission, i.e., the reports of Drs. Smith, Song, Braunlin and Greer. In addition, for her June 4, 2001 vocational report, Morrissey reviewed a "Discharge Summary" dated April 23, 1999, from Mental Health Services for Clark County, Inc. The discharge summary indicates that relator received treatment for her "Major Depressive Disorder Recurrent Severe without psychotic features" from April 5, 1999 to April 23, 1999. Treatment involved 11 sessions on various "topics" such as "depression, chemical dependency, irrational thinking, assertiveness skills, mistaken beliefs, memory skills," etc.
 {¶ 21} 11. The June 4, 2001 Morrissey report concludes:
 {¶ 22} Mrs. Davis is significantly vocationally disabled. She has some past work which was semi-skilled but such skills would not transfer to sedentary work (i.e. the maximum level of work of which the clamant has been opined capable). For vocational purposes she is considered to be an unskilled person so far as the performance of alternate work. She, thus, has no vocational assets to offer an employer. Her limited education and difficulty with reading, writing and basic math further reduce her access to entry-level unskilled sedentary work. Her chronic pain and depression, reducing her ability to concentrate, would further erode her ability to access even unskilled work.
 {¶ 23} "Based on Mrs. Davis' age, limited education, past relevant work with no transferable skills and major mental and physical problems, she is not a candidate for significant numbers of jobs existing either locally, regionally or nationally." (Emphasis sic.)
 {¶ 24} 12. Following a July 17, 2001 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application filed June 12, 2000. After listing the allowed conditions for the 1987 claim, the SHO's order states:
 {¶ 25} "The claimant was injured on 06/19/1987 while removing books from a conveyer belt and twisting to put them on a skid, she felt a burning pain in her upper back. The claimant was working as a bindery worker at the time of the industrial injury and has not worked since. The claimant has had one surgical procedure for the allowed industrial conditions. The claimant had an anterior cervical fusion with excision of the disc and osteophyte with a left iliac bone graft on 01/21/1988. She is currently is [sic] being treated conservatively and takes anti-anxiety medication, receives psychological counseling, Vicodin, Valium, in addition to wearing a low back brace.
 {¶ 26} "The claimant testified at hearing that she last worked on 06/19/1987. She was 39 years of age at that time. The claimant also testified that when she worked as a bindery worker, she would walk approximately 1 hour a day, stand up to 8 hours, bend frequently and lift 50-75 lbs. frequently. The claimant can operate a staple machine, a cutter, a collator, a wrapper, and a press. She left school in order to get married after completing the 8th grade. The claimant's daily activities, according to her testimony, are watching her grandchildren daily, making beds, operating the sweeper, cleaning her house, doing the laundry, and cooking the meals.
 {¶ 27} "The claimant previously filed two IC-2 Applications, on 01/26/1988 and 04/02/1992. On 08/16/1993, the claimant's IC-2 Application was denied as the claimant was found capable of being retrained or reeducated for sedentary work. On 08/31/1998, the claimant's IC-2 Application was denied as the claimant has significant residual functional physical and psychiatric capacities to return to several forms of sustained remunerative employment.
 {¶ 28} "The claimant applied for Social Security Disability compensation; it was denied due to a not having the required contribution quarters.
 {¶ 29} "The Staff Hearing Officer relies upon the persuasive reports dated 04/04/2001 and 04/05/2001 that were prepared by Industrial Commission Physical Medical Rehabilitation Specialist Dr. Daniel Braunlin. * * * Dr. Braunlin opined the claimant is capable of sedentary work activity based upon the allowances of the industrial injury.
 {¶ 30} "The Staff Hearing Officer relies upon the persuasive report dated 04/03/2001 and prepared by Industrial Commission Psychologist Dr. Earl Greer. He supports the conclusion that the allowed psychological conditions do not prevent the claimant from engaging in at least certain kinds of employment, including the claimant's former position of employment. Dr. Greer opines working would be therapeutic for the claimant as it would enhance her self-worth. The degree of emotional impairment from the claimant's industrial accident of 06/17/1987 would not solely prevent her from returning to her former position of employment according to Dr. Greer's report.
 {¶ 31} "The Staff Hearing Officer notes the Employability Assessment Report dated 05/12/2001 and prepared by Industrial Commission Vocational Expert Julie Morrissey. She supports the conclusion that based on the persuasive reports of Dr. Braunlin and Dr. Greer that the claimant retains the residual functional capacities to perform sustained remunerative employment consistent with a number of job titles.
 {¶ 32} "The job titles that were identified by the Vocational Expert as being current employment options for the claimant included: lock assembler; lens inserter; bench hand; and semiconductor assembler. Ms. Morrissey recommends the claimant participate in a retraining program in order to upgrade skills and enhance the claimant's employability.
 {¶ 33} "The Staff Hearing Officer agrees. The residual functional capacities set forth in the above persuasive medical reports clearly would not physically and psychologically prevent the claimant from engaging in sustained remunerative employment consistent with the job titles identified by the Vocational Expert as being current employment options.
 {¶ 34} "The claimant testified at the permanent and total disability hearing that [s]he is currently approximately 53 years of age. The claimant was 39 years of age, a younger person, when she last worked. The Staff Hearing Officer finds that the claimant's age is overall viewed as a positive vocational asset. The claimant's age in and of itself clearly would not prevent the claimant from obtaining and performing sustained remunerative employment consistent with the jobs identified by the Vocational Expert as being current employment options.
 {¶ 35} "The claimant indicated at hearing that she has completed approximately the 9th grade of education. The Staff Hearing Officer finds that the claimant's level of education is overall viewed as a negative vocational factor. However the claimant is able to read, to write, and to perform basic math. A claimant's self assessment that he can perform reading, writing, and basic math not well is some evidence that he possesses basic abilities in these areas. State, ex rel. West v. Indus. Comm. (1996), 74 Ohio St.3d 354. The claimant was 39 years of age when she last worked; since 1987, the claimant has not returned to school to obtain her GED, nor has she participated in any adult basic education classes, or any vocational training classes. The Commission, as does the Court, demands certain accountability of a claimant, who, despite the time and medical ability to do so, never tried to further his education or learn new skills when there was ample opportunity to do so. State, ex rel. Bowling v. National Can Corp. (1996), 77 Ohio St.3d 148.
 {¶ 36} "The claimant's educational level, in combination with her ability to read, write, and to perform basic math, would assist the claimant in obtaining and performing the entry-level, unskilled types of employment identified by the Vocational Expert as being current employment options.
 {¶ 37} "The claimant's prior work history was identified as including the following: nurses' aide; press operator; and bindery worker.
 {¶ 38} "The Vocational Expert notes that the claimant's prior work history ranges from light to very heavy physical strength levels and unskilled to semi-skilled past employment. The claimant's prior work history is overall viewed as being a positive vocational asset as the claimant has demonstrated a temperament to perform repetitive work, working under stress, doing precise work, changing tasks often, and working with people.
 {¶ 39} "The Staff Hearing Officer finds the claimant has potential skills which have not been developed through retraining. The claimant participated in the rehabilitation program in 1989. A vocational evaluation in 3/89 revealed the claimant has limited transferable skills and education, but she is functioning at an entry competitive level of vocational competency for work of unskilled and semi-skilled nature. The claimant could add, subtract, multiply and complete written receiving records, could do general clerical activities, and could complete payroll records. The 1989 rehabilitation evaluation made several recommendations, such as attending adult basic education classes, GED classes, physical therapy, a job search program, and on the job training. The claimant did not follow through with these recommendations.
 {¶ 40} "In 3/90, the claimant was again evaluated for rehabilitation. The claimant underwent physical therapy, psychological counseling, and a job seeking program. The claimant was evaluated by Dr. Pacenta, a Cardiologist, for chest pain in September 1990; per Dr. Pacenta's 09/24/1990 office note, the Thallium scan was unremarkable, the claimant's complaints were atypical, and no further evaluation was recommended. The claimant's rehabilitation file was closed on 10/17/91 as the claimant's physical capacities were not consistent with employment. The specific reason for the claimant's rehab closure is unknown. Since 1991, no further contacts with the rehabilitation department were made by the claimant.
 {¶ 41} "The claimant indicated at hearing that she is not willing to participate in rehabilitation as she can not use her arms and can not tolerate the rejection of being thrown out of rehabilitation.
 {¶ 42} "The claimant has not sought retraining, a GED, nor vocational classes, since she last worked in 1987. The Commission must consider potential skills which can be developed. A claimant's lack of participation in ret[r]aining does not necessarily translate into an inability to be retrained. The existence or lack thereof, of expert evidence as to claimant's ability to participate in medical and/or vocational rehabilitation or retraining is relevant. State, ex rel. B.F. Goodrich Co. v. Indus. Comm. (1995), 73 Ohio St.3d 525.
 {¶ 43} "Based on a careful consideration of the above, as well as all of the evidence in file and at hearing, the Staff Hearing Officer concludes that the claimant is capable of performing sustained remunerative employment consistent with the job titles identified by the Vocational Expert as being current employment options. Therefore, the claimant is not permanently totally disabled."
 {¶ 44} 13. On April 26, 2002, relator, Betty L. Davis, filed this mandamus action.
Conclusions of Law:
 {¶ 45} Three issues are presented: (1) whether the commission abused its discretion in failing to evaluate and consider the 1986 claim; (2) whether the report of Mr. Greer is some evidence upon which the commission can rely; and (3) whether the Employability Assessment Report of Julie Morrissey is some evidence upon which the commission can rely.
 {¶ 46} The magistrate finds: (1) the commission abused its discretion in failing to address the 1986 claim; (2) the report of Mr. Greer is some evidence upon which the commission can rely; and (3) the employability assessment report of Julie Morrissey is not some evidence upon which the commission can rely.
 {¶ 47} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 48} Turning to the first issue, Ohio Adm. Code 4121-3-34(C) sets forth the commission's rules for the "processing" of PTD applications. Ohio Adm. Code 4121-3-34(C)(5)(a) states:
 {¶ 49} "During the sixty days following the date of filing of the permanent and total disability application, the claims examiner shall perform the following activities:
 {¶ 50} "(i) Obtain all the claim files identified by the claimant on the permanent total disability application and any additional claim files involving the same body part(s) as those claims identified on the permanent total disability application.
 {¶ 51} "(ii) Copy all pertinent documents including medical and hospital reports pertinent to the issue of permanent and total disability and submit the same to an examining physician to be selected by the claims examiner.
 {¶ 52} "(iii) Schedule appropriate medical examination(s) by physician(s) to be selected by the industrial commission."
 {¶ 53} Because claimant identified both claims on her PTD application, Ohio Adm. Code 4121-3-34(C)(5)(a) required the claims examiner to obtain both claim files and to schedule appropriate medical examinations. We do not know why Dr. Braunlin was apparently not asked to examine for the 1987 claim. The SHO's order of July 17, 2001, does not explain why the 1986 claim was not scheduled for an examination. Here, the commission suggests that the 1986 claim "may have reached the statute of limitations by 1998, which may well explain why the commission does not discuss the 1986 claim * * * in its order." (Commission's brief at 1.)
 {¶ 54} The problem is that we do not know whether the 1986 claim had become inactive due to the statute of limitations on claims. See R.C. 4123.52 (six-year limitation). The commission here merely speculates that may be the case.
 {¶ 55} The Ohio Supreme Court has repeatedly held that, in determining whether a claimant is permanently and totally disabled, the commission must consider every allowed condition. State ex rel. Johnson v. Indus. Comm. (1988), 40 Ohio St.3d 339. (The claimant's PTD application was supported by a report from psychiatrist, G.M. Sastry, who found claimant to be permanently totally disabled. The commission exclusively relied upon a report from Dr. Colquitt, who evaluated only the physical conditions.) State ex rel. Cupp v. Indus. Comm. (1991),58 Ohio St.3d 129. (The "numerous serious conditions" additionally allowed in the claim were not mentioned in the commission's order nor evaluated by Dr. McCloud upon whom the commission exclusively relied.) State ex rel. Didiano v. Beshara (1995), 72 Ohio St.3d 255. (Claimant's "serious psychiatric condition," major depression, was not evaluated by the two doctors' reports upon whom the commission relied.) State ex rel. Roy v. Indus. Comm. (1996), 74 Ohio St.3d 259. (Following the PTD hearing, claimant moved to amend his claim to include a psychiatric condition. The commission added the psychiatric claim allowance, but failed to consider it when it denied reconsideration.)
 {¶ 56} The magistrate recognizes that relator did not herself submit a doctor's opinion indicating that the allowed condition or conditions of the 1986 claim contributes to disability. Nevertheless, relator did list the 1986 claim on her PTD application as being one that she wanted the commission to consider. In the magistrate's view, if the 1986 claim was an active claim at the time the application was filed, Ohio Adm. Code 4121-3-34(C)(5)(a) and the cases cited, imposed a duty upon the commission to schedule an appropriate medical examination for the 1986 claim regardless of the fact that relator did not submit her own medical report regarding the claim. On the other hand, if the 1986 claim was determined to be inactive under the six-year limitation of R.C.4123.52, that finding should have been clearly set forth in the commission's order adjudicating the PTD application.
 {¶ 57} In short, the commission abused its discretion by either failing to have relator examined on the 1986 claim or failing to explain in its order why it was not having relator examined on the 1986 claim.
 {¶ 58} For the second issue, relator challenges the psychological report of Mr. Greer on grounds that Greer fails to address or acknowledge relator's "1999 hospitalization," or relator's reference to her April 1999 treatments at Mental Health Services of Clark County Inc. (Relator's brief at 10.) According to relator, this omission renders Greer's report "incomplete" or "unreliable." Id.
 {¶ 59} Relator's challenge to the Greer report is not cognizable in this mandamus action, although such challenge would have been appropriate at the administrative proceedings before the commission. There is no requirement that an examining expert acknowledge in his report all aspects of the claimant's medical history. In effect, relator is inviting this court to second-guess Greer's psychological expertise, something this court should not do. See State ex rel. Young v. Indus. Comm. (1997), 79 Ohio St.3d 484, 487.
 {¶ 60} Turning to the third issue, it is well-settled that equivocal medical opinions are not evidence. State ex rel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 657. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id. It follows that equivocal vocational opinions are not evidence.
 {¶ 61} Here, Julie Morrissey's ultimate vocational opinion, found in her employ-ability assessment report, as to relator's ability to perform sustained remunerative employment seems to be repudiated in her June 4, 2001 report. In her employability assessment report, Morrissey lists employment options based upon the medical opinions of Greer and Braunlin. In her subsequent report rendered at relator's request, Morrissey concludes, seemingly based upon the same medical reports, that relator "is not a candidate for significant numbers of jobs existing either locally, regionally, or nationally."
 {¶ 62} According to the commission in this action, Morrissey does not repudiate her employability assessment report opinion because her statement that relator "is not a candidate for significant numbers of jobs," does not exclude all employment. While the magistrate agrees that Morrissey's June 4, 2001 conclusion can be read to not exclude all possible employment, this magistrate cannot ignore the dramatic change of opinion between the two reports.
 {¶ 63} The commission's employability assessment manual provides the following instructions to the employability assessor:
 {¶ 64} "If a given medical/psychological opinion leads you to find the claimant employable, list 6-8 appropriate DOTs or 6 OES Classifications, representing (when possible) opportunities in retail, clerical, service or production industries. * * *
 {¶ 65} "If you find employability, we want your list to reflect realistic job options, which would be used by the claimant as a guide in setting up a job search. Please eliminate any job titles which represent rarely found occupations.
 {¶ 66} "Occupations which you identify as feasible for the claimant — either at present or following remediation or brief training — must be selected on the basis of your professional understanding of their demands. Obviously, this understanding will reflect the narrative and numerical description of these occupations in Labor Department publications. Your personal knowledge of `real world' job demands is also expected."
 {¶ 67} Thus, if Morrissey followed the commission's instructions as to how to write her employability assessment report, her listing of "Lock Assembler; Lens Inserter; Bench Hand; Semiconductor Assembler," reflected "realistic job options" and not "rarely found occupations." Given that scenario, Morrissey's vocational conclusion of June 4, 2001, that relator "is not a candidate for significant numbers of jobs existing either locally, regionally or nationally," is indeed a repudiation of her employability assessment report conclusion. Given the subsequent repudiation, Morrissey's employability assessment report cannot constitute some evidence upon which the commission can rely.
 {¶ 68} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its SHO order of July 17, 2001, to eliminate Morrissey's reports from further evidentiary consideration, to address the 1986 industrial claim in a manner consistent with this magistrate's decision, and to thereafter enter a new order adjudicating relator's PTD application.