DECISION
{¶ 1} In this original action, relator, The Lubrizol Corporation, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding permanent total disability ("PTD") compensation to respondent Terry W. Sigler ("claimant"), and to enter an order denying said compensation. *Page 2 
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the evidence and issued a decision (attached as Appendix A), including findings of fact and conclusions of law. Therein, the magistrate concluded that the commission's order awarding PTD compensation to claimant was flawed with respect to the qualitative nature of its analysis regarding claimant's non-medical disability factors. Specifically, the magistrate found that based on the Supreme Court of Ohio's decision in State ex rel. B.F. Goodrich Co. v. Indus.Comm. (1995), 73 Ohio St.3d 525, the commission failed to determine whether there were any skills which claimant could reasonably develop in order to procure sustained remunerative employment. The magistrate, therefore, recommended this court issue a writ of mandamus. Because claimant has filed an objection to the magistrate's decision, this matter is now before this court for a full, independent review.
 {¶ 3} By his objection, claimant argues that the magistrate erred by failing to consider the medical opinion of claimant's physician, Dr. Tardio, who opined in his report that claimant's "conditions are permanent and he is totally and permanently disabled." (Medical report of Jerry Tardio, M.D., at 2.) Claimant also asserts, as he did in the hearing before the staff hearing officer ("SHO"), that he did not seek other employment because Dr. Tardio advised him that he "was not capable" of working. (Hearing tr. at 29.) Thus, claimant argues that Dr. Tardio's report and his advice to claimant (regarding his inability to work) wholly satisfy the PTD requirement that there be a total inability to work based on the claimant's allowed condition[s], and, therefore, claimant cannot be held accountable for not seeking vocational rehabilitation or retraining. Claimant buttresses *Page 3 
his argument by citing to a statement expressed in B.F. Goodrich, supra, which suggests that a claimant may be excused from participating in a vocational program if "the claimant's lack of participation was based on a physician's medical advice."
 {¶ 4} Relator responsively contends that Dr. Tardio's opinion falls short because his opinion was limited to addressing claimant's capability of performing sustained remunerative employment in his current physical condition, and, at no time, has Dr. Tardio rendered an opinion that claimant is incapable of participating in a vocational rehabilitation program that would enable claimant to engage in sustained remunerative employment. As such, relator argues that claimant has not met his burden in demonstrating that he qualifies for PTD compensation.
 {¶ 5} Our analysis begins with the SHO's order, which granted claimant's application for PTD based, in part, on the report of Dr. Tardio. The SHO also discussed the findings of Drs. Elizabeth Mease and John G. Nemunaitis, both of whom opined that claimant could perform sedentary work. Citing to the opinions expressed by Drs. Tardio, Mease, and Nemunaitis, the SHO found that claimant could "perform at best sedentary to light work." (SHO order at 2.) The SHO's analysis then proceeded to evaluate claimant's vocational factors, which, as the magistrate correctly noted, discussed the skills that claimant currently possessed, but did not clearly discuss whether claimant had any potential skills that could be developed.
 {¶ 6} Although claimant argues that the magistrate erred by failing to consider the advice given by Dr. Tardio to claimant, we note that the order at issue makes no mention of the same; while the SHO noted claimant's credibility several times regarding various issues, the SHO did not expressly reference claimant's testimony regarding Dr. Tardio's *Page 4 
advice. Thus, to the extent that Dr. Tardio's advice to claimant was not given due consideration, fault lies not with the magistrate, but, rather, with the commission's order, which is unclear as to how, if at all, the SHO treated claimant's testimony in this regard.
 {¶ 7} Upon reviewing the record, we agree with the magistrate's analysis that the commission's evaluation of the non-medical disability factors is insufficient under B.F. Goodrich, supra, insofar as the SHO did not indicate whether claimant had any skills that could reasonably be developed, thereby enabling claimant to perform sustained remunerative employment. Accordingly, claimant's objection is not well-taken and is overruled.
 {¶ 8} Pursuant to Civ.R. 53(E)(4), we have conducted a full review of the magistrate's decision and claimant's objection thereto. For the foregoing reasons, we overrule claimant's objection and find that the magistrate made no error of fact or law. Accordingly, we adopt the magistrate's decision as our own and grant relator's request for a writ of mandamus ordering the commission to vacate its PTD order and compelling the commission to reconsider claimant's application for PTD compensation in light of our findings herein.
Objection overruled; writ granted.
 SADLER and FRENCH, JJ., concur. *Page 5 
 APPENDIX A MAGISTRATE'S DECISION Rendered September 26, 2007 IN MANDAMUS {¶ 9} In this original action, relator, The Lubrizol Corporation, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate *Page 6 
its order awarding permanent total disability ("PTD") compensation to respondent Terry W. Sigler ("claimant"), and to enter an order denying said compensation.
Findings of Fact: {¶ 10} 1. On September 21, 2001, claimant sustained an industrial injury while employed as a maintenance mechanic at a chemical factory operated by relator, a self-insured employer under Ohio's workers' compensation laws. On that date, claimant injured his lower back while lifting a heavy valve.
 {¶ 11} 2. The industrial claim is allowed for "acute myofascial strain lumbar; bulging discs at L4-5, L5-S1 and radiculopathy," and is assigned claim number 01-852681.
 {¶ 12} 3. On April 13, 2006, claimant filed an application for PTD compensation. In support, claimant submitted a report, dated January 26, 2006, from treating physician Jerry C. Tardio, M.D. Dr. Tardio's report states:
 Terry Sigler was injured on his job, September 21, 2001 while lifting a 200 pound valve. I saw Mr. Sigler on 9-26-01 with a complaint of low back pain radiating into his right buttock. On exam he had spasm noted in the paraspinal musculature. His flexion was limited, with extension severely limited. He had a negative straight leg raise, bilaterally. Knee jerk and ankle reflexes were 2+ on the left and 3+ on the right. Motor strength, sensory function and rectal tone were within normal limits. He had no previous history of low back problems. He was prescribed a steroid taper, muscle relaxers and pain medicine. Physical therapy was added in October 2001.
 When his symptoms persisted, he had an MRI on 10-26-01 to further evaluate his injury. His MRI showed a moderate central posterior bulging of the anulous fibrosis of L4-L5 disc with mild canal stenosis. Mr. Sigler had returned to work as he was able to, was going to physical therapy and taking NSAIDS. *Page 7 
 Mr. Sigler continued with this program until March 2002 when he complained of increased radicular pain into his right leg. Terry stated the increased symptoms were directly related to his attempts to return to a normal workday. Narcotic pain medicine, a course of epidural nerve blocks, chiropractic care and conservative therapy failed to relieve Terry Sigler's pain.
 I referred him to a neurosurgeon in October 2002. Terry Sigler had a laminectomy at L4-L5 on 12-6-2002 with Dr. James Anderson. Initially this patient had relief of his pain, but over the next several months, the pain recurred.
 I have continued to see Mr. Sigler every 3 months and his back pain and neuropathy continue. He has parathesia in his first four toes on his left foot and has increased spasms, despite medication.
 I last saw Mr. Sigler on January 24, 2006. His neuropathy is still present. He continues to have low back pain, spasm and limited range of motion. Medication for neuropathies is helping at this point, but this patient is severely limited with his activities.
 It is my opinion that Mr. Sigler's injury on September 21, 2001 is directly responsible for his low back pain, his disc disease, his radiculopathy and subsequent neuropathy and parathesia. He has had impaired sexual function and constipation since 2001. It is my opinion that his conditions are permanent and he is totally and permanently disabled. Terry Sigler has done everything asked of him and has tried valiantly to maximize his medical improvement. I do not expect his condition or his symptoms to change. They may, in fact, worsen over time.
 {¶ 13} 4. Under the "education" section of the PTD application, claimant indicated he is a high school graduate and that he attended Lakeland Community College in 1972.
 {¶ 14} The PTD application form asks the applicant to describe any special training. In response, claimant wrote: "welding, pipefitting, plumbing, fabrication, mobile telescoping crane school." *Page 8 
 {¶ 15} The application form also posed three questions: (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?" Given the choice of "yes," "no" and "not well," claimant selected the "yes" response to all three queries.
 {¶ 16} The application form also asks the applicant to provide information regarding the applicant's work history. Claimant indicated that he worked as a maintenance mechanic at a chemical factory beginning March 1980. This job was apparently with relator. Before that, he worked as a maintenance worker for "Syncticate Cyrstals" from 1975 to 1980. Prior to that, claimant worked in "car sales" during 1974 and 1975. From July 1973 to June 1974, claimant worked as a "welder fitter" for "Super Tanker Ships." From 1972 to 1973, claimant worked in "sales" for an "auto parts" company. Prior to that, he served in the United States Navy as a welder.
 {¶ 17} The application form asks the applicant to describe the basic duties of the jobs listed under the work history. For the maintenance mechanic job he held beginning March 1980, claimant wrote:
 Welding, Fabrication, Pipe Fitting, Plumbing Pump Repair, Trouble shooting, Read Blue Prints, Train others in field, Fil[l] in for Foreman when necessary, Assign Job Duties.
 {¶ 18} 5. On May 11, 2006, at relator's request, claimant was examined by Elizabeth Mease, M.D., who wrote:
 It is my opinion that he is capable of sedentary to light physical demand activities. It is my opinion that that [sic] he can lift, push, pull, and carry up to 15 lbs occasionally from the knee to chest level. He should be allowed to sit and stand as needed. He should avoid repetitive squatting, kneeling, and stooping activities. He should not climb.
 * * * *Page 9 
 Solely as related to the allowed conditions of the claim, it is my opinion that he is not permanently and totally disabled. Based on the medical documentation and my current examination, it is my opinion that he is capable of sedentary to light physical demand activities. There is also sufficient medical and clinical evidence that at least part of his current symptoms and findings are related to age related degenerative condition of his lumbar spine. There is also clinical evidence of upper motor neuron dysfunction.
 Using the 5th edition of the AMA Guides to the Evaluation of the Permanent Impairment and according to Table 15-3, he fulfills DRE lumbar spine impairment Category III. This equates to a 12% whole person impairment. Taking into consideration the history, medication use, and activities of daily living, there is no additional impairment warranted for pain.
 {¶ 19} 6. On August 2, 2006, at the commission's request, claimant was examined by John G. Nemunaitis, M.D., who wrote:
 The injured worker does have residual biomechanical problems in the lumbar spine likely associated with the spinal canal adhesions. There are no findings that reflect an acute radiculopathy. There are no findings that reflect a recurrent herniated disc although there are findings compliant with a left L5 and S1 residual radiculopathy and possibly S1 on the right. However, based on examination today, the injured worker is capable of physical work activity at a sedentary work capacity. He would be a good candidate for vocational rehabilitation program. He doesn't recall having had an opportunity at vocational rehabilitation. The injured worker was followed in pain clinic. The D.R.E. System was utilized to determine whole person impairment being that the injured worker was not able to do full active range of motion of lumbar spine during examination because of pain and fear of pain. Therefore the lumbar range of motion measures were not valid.
 * * *
 * * * Based on AMA Guides, 5th
Edition, the estimated percentage of whole person impairment arising from each allowed condition is as follows: The estimated percentage of *Page 10 
whole person impairment as relates to acute myofascial strain, lumbar bulging disc at L4-L5 and L5-S1 and radiculitis is Lumbar D.R.E. Category 3 or 10%. Whole person impairment as relates to all allowed conditions is 10%.
 {¶ 20} 7. On August 2, 2006, Dr. Nemunaitis completed a physical strength rating form on which he indicated that claimant is capable of "sedentary" work.
 {¶ 21} 8. On October 9, 2006, at relator's request, vocational expert Holly E. Atherton issued a vocational report, stating:
 Discussion Participation in vocational rehabilitation may in fact help the claimant develop new skills that could lead to a successful return to work. Any vocational program would need to address the claimant's vocational limitations, including education and work history. State and federally funded rehabilitation programs could aid the claimant in setting training and return to work goals. Short-term training may help the claimant develop a more marketable set of skills for employment.
 Summary This specialist's analysis of the claimant's transferable skills indicates that the claimant has direct transferable skills in the sedentary to light work capacity.
 When considering opportunities to access the job market, the claimant may want to take advantage of job-seeking skills training and assisted job placement programs. These programs and services can be accessed through local nonprofit agencies at the county and state levels.
 Based on the information available to this specialist and considering the allowed conditions of the claims, the claimant's education, physical abilities, skills, age, prior work experience, and labor market data, it is this specialist's opinion that the claimant is capable of sustained remunerative employment. *Page 11 
 {¶ 22} 9. On December 28, 2006, claimant's PTD application was heard by a staff hearing officer ("SHO"). The hearing was recorded and transcribed for the record.
 {¶ 23} 10. Following the hearing, the SHO issued an order awarding PTD compensation beginning January 26, 2006. The SHO's order explains:
 Claimant's permanent total disability benefits are to begin as of 01/26/2006. This is based upon the 01/26/2006 report of Dr. Jerry C. Tardio, which is the first evidence of permanent total disability.
 Claimant was injured on 09/21/2001. Claimant was removing leaking valves when he pulled his lower back replacing a three inch full cut ball valve. The claim was allowed for acute myofascial strain lumbar, bulging discs L4-5, L5-S1 and radiculopathy.
 Claimant underwent a number of diagnostic tests and on 12/06/2002 underwent a laminectomy at the L4-5 level. Claimant testified credibly that the surgery was not successful. After claimant's laminectomy he returned to work approximately six months later and in November 2003 he went to Dr. Tardio complaining of low back pain and at that time was told to stop working. Claimant thus last worked in November of 2003. Claimant testified that during that period of time, claimant attempted to obtain employment at his employer, Lubrizol, at a lighter duty position and was told that there was not any available and thus was unable to place him in a job within his physical restrictions.
 Claimant filed the 01/26/2006 report of Dr. Tardio to support his application. Dr. Tardio found in his report dated 01/26/2006, "I have continued to see Mr. Siegler [sic] every three months and his back pain and neruopathy continue. He has parasthesia in his first four toes on his left foot and has increased spasms, despite medication.
 I last saw Mr. Siegler [sic] on 01/24/2006. His neuropathy is still present. He continues to have low back pain, spasm and limited range of motion. Medication for neuropathies is helping at this point, but this patient is severely limited with his activities. *Page 12 
 It is my opinion that Mr. Siegler's [sic] injury on 09/21/2001 is directly responsible for his low back pain, his disc disease, his radiculopathy and subsequent neuropathy and parasthesia. He has had impaired sexual function and constipation since 2001. It is my opinion that his conditions are permanent and he is totally and permanently disabled. Terry Siegler [sic] has done everything asked of him and have strived valiantly to maximize his medical improvement. I do not expect his conditions or his symptoms to change. They may in fact, worsen over time."
 The claimant was examined on the employer's behalf by Dr. Mease and her report in on file dated 05/19/2006.
 Dr. Mease finds that it is her opinion that the claimant is capable of sedentary to light physical demand activities. "It is my opinion that he can lift, push, pull, and carry up to 15 pounds occasionally from the knee to chest level. He should be allowed to sit and stand as needed. He should avoid repetitive squatting, kneeling and stooping activities, he should not climb."
 The claimant's attorney noted that it was his opinion that these restrictions placed claimant in a sedentary level rather than a light duty level.
 Claimant was finally examined by Dr. Nemunaitis and his report is dated 08/02/2006. Dr. Nemunaitis examined the claimant on all the allowed conditions and it was his opinion that claimant is capable of performing sedentary work.
 Thus, the Staff Hearing Officer finds that the claimant is able to perform at best sedentary to light work and a review of the claimant's vocational factors is mandated.
 The employer filed a report from Holly Atherton dated 09/20/2006 who opines that the claimant is capable of finding sustained and remunerative employment.
 A review of the claimant's vocational factors reveals that the claimant is currently age 58 which would be considered a vocational asset. Claimant has a education which is consisted of a high school degree and attendance at Lakeland Community College in 1972. Claimant has numerous previous jobs which include sales in auto parts, *Page 13 
cars salesman, welder, maintenance, and the job which claimant was injured at which was from 1980 to 2003, which was a maintenance/mechanic at Lubrizol.
 The Staff Hearing Officer finds claimant's permanent total disability application filed 04/13/2006 is granted for the reason that the claimant's low back injury he sustained on 09/21/2001 is preventing him from ever returning to his former position of employment and that he would not be able to find sustained and remunerative employment in the sedentary to light job fields. The Staff Hearing Officer finds that claimant's testimony was credible in that he has disabilities which are preventing him from many daily activities and which has restricted his daily activities since 09/21/2001.
 Claimant testified credibly that some of his prior jobs, for example car salesman, was not something that his personality was suited for and that he would not be able to perform at this time. Claimant testified that his skills were related to manual labor and maintaining and fixing machinery. Claimant testified credibly that due to this low back injury and the failed surgery, claimant would not be able to perform these duties in the future, though claimant has some vocational factors which would indicate he may be able to obtain employment in the sedentary to light level, in a practical sense, due to the fact that claimant has been involved in a manual labor job for over 20 years and that his lighter duty jobs/cars salesman were in 1974 and 1975, that realistically his transferable skills into sedentary employment are minimal at best.
 Staff Hearing Officer is persuaded by claimant's testimony of his difficulties in daily living, and the restrictions claimant has since the injury in September of 2001. Staff Hearing Officer is further persuaded by the fact that the employer was unable to find him a job at the sedentary/light duty level which supports the claimant's contention that if an employer such as Lubrizol could not find him a job within his residual functional capacity, the chances of finding employment in the sedentary/light duty level in the general job market is not very likely.
 For the above reasons, the claimant's Permanent Total Disability application filed 04/13/2006 is granted. *Page 14 
 {¶ 24} 11. On February 22, 2007, the three-member commission mailed an order denying relator's request for reconsideration of the SHO's order of December 28, 2006. One commission member voted against the order denying reconsideration.
 {¶ 25} 12. On March 12, 2007, relator, The Lubrizol Corporation, filed this mandamus action.
 Conclusions of Law: {¶ 26} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 27} Ohio Adm. Code 4121-3-34 sets forth the commission's rules for the adjudication of PTD applications.
 {¶ 28} Ohio Adm. Code 4121-3-34(D) sets forth the commission's guidelines for adjudication of PTD applications.
 {¶ 29} Ohio Adm. Code 4121-3-34(D)(2)(b) and (c) state:
 (b) If, after hearing, the adjudicator finds that the injured worker, based on the medical impairment resulting from the allowed conditions is unable to return to the former position of employment but may be able to engage in sustained remunerative employment, the non-medical factors shall be considered by the adjudicator.
 The non-medical factors that are to be reviewed are the injured worker's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record that might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed. * * *
 (c) If, after hearing and review of relevant vocational evidence and non-medical disability factors, as described in paragraph (D)(2)(b) of this rule the adjudicator finds that the *Page 15 
injured worker can return to sustained remunerative employment by using past employment skills or those skills which may be reasonably developed through retraining or through rehabilitation, the injured worker shall be found not to be permanently and totally disabled.
(Emphasis added.)
 {¶ 30} In State ex rel. B.F. Goodrich Co. v. Indus. Comm. (1995),73 Ohio St.3d 525, the court determined that the commission's explanation of the nonmedical factors was insufficient. After commenting on the nonmedical factors of record in light of the commission's order, theB.F. Goodrich court concluded, at 530:
 In this case, the commission said only that claimant's present skills would not transfer to other employment. It did not say anything about potential skills that could be developed. A claimant's lack of participation in retraining does not necessarily translate into an inability to be retrained. We find, therefore, that under these facts the commission's explanation is insufficient.
(Emphasis sic.)
 {¶ 31} The magistrate finds that the commission's order in the instant case is flawed in a manner similar to that found in B.F. Goodrich.
 {¶ 32} Here, the commission determined that claimant's transferable skills into sedentary employment "are minimal at best." The conclusion regarding minimal transferable skills was based upon the fact that claimant had been involved in a manual labor job for over 20 years and his employment prior to that as a car salesman is too remote. The commission also relied upon the fact that relator was unable to place claimant in a job at the sedentary/light level of employment. Clearly, this line of reasoning is focused upon claimant's current skills, or lack thereof. *Page 16 
 {¶ 33} Yet the commission found that claimant's age of 58 years is a "vocational asset," and that he is a high school graduate who attended a community college in 1972.
 {¶ 34} Like the situation in B.F. Goodrich, the commission's analysis of the nonmedical factors does not go far enough. The commission, through its SHO, failed to determine whether there are skills which may be reasonably developed that can lead to sustained remunerative employment.
 {¶ 35} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its order awarding PTD compensation and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates the PTD application. *Page 1