DECISION
{¶ 1} Karen L. Munden filed this action in mandamus, seeking a writ to compel the Industrial Commission of Ohio ("commission") to vacate its order denying her most recent application for permanent total disability ("PTD") compensation.
 {¶ 2} In accord with local rules, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which contains detailed findings of *Page 2 
fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes a recommendation that we deny the requested relief.
 {¶ 3} Counsel for Ms. Munden has filed objections to the magistrate's decision. Counsel for the commission has filed a memorandum contra. The case is now before the court for review.
 {¶ 4} Ms. Munden has been injured on two separate occasions while employed at the Ohio Veterans Home. Her industrial claims have been recognized for "sprain left shoulder; sprain thoracic region; sprain of neck; sprain lumbosacral; aggravation lateral herniated disc L5; aggravation pre-existing major depressive disorder."
 {¶ 5} When evaluating her most recent application for PTD compensation, the commission had before it a report of Andrew Freeman, M.D., who found that Ms. Munden could engage in sedentary work with no overhead reaching. The parties do not disagree upon whether the report constitutes some evidence that Ms. Munden is physically capable of sustained remunerative employment.
 {¶ 6} The issue then becomes whether the major depression disorder from which Ms. Munden suffers, when combined with her physical condition, renders her incapable of sustained remunerative employment.
 {¶ 7} The parties disagree on what evidence should be considered in making this determination. The commission, in denying the application for PTD compensation, relied upon a report of Ralph E. Skillings, Ph.D., dated February 18, 2004. Dr. Skillings found that Ms. Munden, as of that date, could return to any former position of employment and perform any sustained remunerative employment. *Page 3 
 {¶ 8} The commission also had before it a report from commission specialist, Michael F. Farrell, Ph.D., dated January 13, 2006. Dr. Farrell also examined Ms. Munden at the request of the commission. Dr. Farrell concluded that Ms. Munden could return to her previous employment and that she was also psychologically able to perform other work with certain restrictions. Dr. Farrell found a moderate impairment in social functioning, a mild impairment in stress tolerance, a mild to moderate impairment in cognitive functioning and a moderate impairment in endurance/pace.
 {¶ 9} The reports of Dr. Skillings and Dr. Farrell are not so different as to be the basis for an additional review by the commission. Both feel she could return to her previous employment and could perform other work.
 {¶ 10} Under the circumstances, the commission was well within its discretion to refuse to grant PTD compensation for Ms. Munden.
 {¶ 11} We overrule the objections to the magistrate's decision. We adopt the findings of fact and conclusions of law contained in the magistrate's decision. As a result, we deny the request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
 SADLER, P.J., and WHITESIDE, J., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution. *Page 4 
 APPENDIX A MAGISTRATE' SDECISION IN MANDAMUS {¶ 12} Relator, Karen L. Munden, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for permanent total disability ("PTD") compensation and ordering the commission to find that she is entitled to that compensation. *Page 5 
 {¶ 13} Findings of Fact:
 {¶ 14} 1. Relator has sustained two work-related injuries and her claims have been allowed for "sprain left shoulder; sprain thoracic region; sprain of neck; sprain lumbosacral; aggravation lateral herniated disc L5; aggravation pre-existing major depressive disorder."
 {¶ 15} Relator filed her first application for PTD compensation in February 2002. That application was denied in August 2002.
 {¶ 16} Relator filed her second application for PTD compensation in December 2003. At the time, relator was 50 years old. On her application, relator indicated that she graduated from high school, received some trade or vocational training, could read, write and perform basic math, and had a work history as a cook, beginning as a fryer cook and eventually as a head cook where she had responsibilities of record keeping and supervised up to 16 people.
 {¶ 17} In denying her second application for PTD compensation in June 2004, the commission relied upon the medical reports of Terrence B. Welsh, M.D., and Ralph E. Skillings, Ph.D. In his February 17, 2004 report, Dr. Welsh opined that relator had reached maximum medical improvement ("MMI"), assessed a 24 percent whole person impairment, and concluded that relator was capable of performing sedentary work. Dr. Skillings examined relator for her psychological condition and, in his report dated February 18, 2004, Dr. Skillings opined that relator had reached MMI, assessed a 25 percent whole person impairment (moderate), and concluded that relator could return to any former position of employment and perform any sustained remunerative employment. Dr. Skillings administered certain psychological tests which he interpreted *Page 6 
as demonstrating the following: attempts to portray self in a negative or pathological manner common among individuals feigning mental disorder; heightened sensitivity to social interactions; tends to question and mistrust the motives of others; working relationships are likely to be strained; critical of self; and mild depression symptoms.
 {¶ 18} Dr. Skillings expressed his findings supporting this opinion:
 Exam findings suggest that she is able to plan and organize daily life/affairs. She drove to this exam and goes to the grocery several times a week as needed. She would similarly be expected in a work setting to leave home in-dependently and transport herself. She understands simple interactions, instructions, and may retain them once pro-cessed. She understood instructions throughout this review without a need to clarify or repeat them. Immediate and remote memory were both adequate and she could recall the general aspects of both the recent and distant past and is expected to be able to recall familiar procedures in a work setting, particularly if they are more concrete. While she describes occasions of being annoyed or irritated toward others and remains vigilant to assure acceptance she is able to effectively communicate with other people. Self-image was negative and she tends to blame herself thus showing a weakness functionally with likely difficulty if she is asked to improve her skills. Responsibility for materials and tasks within her home setting is partially maintained with in-dependent transportation, paying her bills, and occasions of cooking meals each week. Performing activities at an acceptable rate is diminished both due to her depressive condition and equally her medical limitations. She is able to concentrate for a reasonable period of time. Activities have been curtailed with her multiple medications unrelated to her industrial accident including her obese condition. Whether she can sustain an 8-hour range of duties is a medical judgment beyond my own training.
 {¶ 19} Relator filed her third application for PTD compensation in October 2005. In support of that application, relator submitted the September 7, 2005 report of James E. Lundeen, Sr., M.D., who examined relator for her allowed physical conditions. After providing his findings on physical examination, Dr. Lundeen concluded that relator *Page 7 
had a 64 percent lumbar whole person impairment. He indicated further that relator could lift/carry up to seven pounds occasionally and up to three pounds frequently; stand/walk for a total of two-to-three hours and for 60 minutes without interruption; sit for three-to-four hours during an eight-hour workday and for 60 to 90 minutes without interruption; could never crawl, but could climb, balance, stoop, kneel and crouch occasionally; relator's abilities to reach, push and pull were affected and Dr. Lundeen further indicated that relator should avoid heights, moving machinery, temperature extremes, humidity and vibration.
 {¶ 20} The commission had relator evaluated by Andrew Freeman, M.D. In his report dated January 13, 2006, Dr. Freeman provided his physical findings upon examination, opined that relator's allowed physical conditions had reached MMI, assessed an 18 percent whole person impairment, and opined further that relator could engage in sedentary work with no overhead reaching.
 {¶ 21} Relator did not present any additional psychological evidence. However, the commission had relator examined by Michael T. Farrell, Ph.D. In his January 13, 2006 report, Dr. Farrell opined that relator's allowed psychological condition had reached MMI, assessed a 30 percent whole person impairment (moderate) and concluded that relator could not return to her previous employment but could perform other work for which she was otherwise qualified. Dr. Farrell administered certain psychological tests which he interpreted as demonstrating the following: results indicate some tendency to over-report, but, in his opinion, it does not represent a conscious attempt to distort the results; some features of paranoia and long-term characterological dysfunction; moderate depression; moderate impairment in social functioning; mild *Page 8 
impairment in stress tolerance; mild to moderate impairment in cognitive functioning; and moderate impairment in endurance/pace.
 {¶ 22} On June 13, 2006, relator's application was heard before a staff hearing officer ("SHO") and was denied. The SHO relied upon the medical reports of Drs. Freeman and Skillings. With regards to the nonmedical disability factors, the SHO referenced a June 2002 employability assessment prepared by John Kilcher. Mr. Kilcher indicated that relator's then age of 47 years would not be detrimental to her ability to be reemployed and that she was qualified to participate in retraining or rehabilitation in order to meet the basic demands of entry-level occupations. Mr. Kilcher also noted that relator's educational background was favorable. With regard to her prior work history, Mr. Kilcher opined that relator had not acquired any transferable skills which she could use within her reduced functional abilities; however, he noted that her work history indicated that she could acquire additional job skills through on-the-job training. Specifically, Mr. Kilcher noted that claimant's education, work history and average aptitude for clerical perception would permit her to adapt to a clerical work setting. The SHO explained why Mr. Kilcher's report was still considered viable:
 In light of the fact that there is no evidence the injured worker has ever attempted vocational rehabilitation, Mr. Kilcher's report and findings are still found applicable. Further, even at 52 Mr. Kilcher's findings are still found to apply. This is found to be true because the claimant is still within the normal age limit guidelines for vocational rehabilitation. This is also found to be true because entry level unskilled work only requires 30 days of training per the Dictionary of Occupational Titles, and entry level semi-skilled work only requires up to 6 months of training. Even at age 52 the injured worker has sufficient work life expectancy to undergo up to 6 months or more of retraining and/or vocational rehabilitation. *Page 9 
 {¶ 23} Lastly, the SHO specifically noted that relator had not made a reasonable effort to acquire skills and abilities which would assist her in reemployment:
 The SHO therefore finds that based on the preceding analysis for a vocational, physical, and psychological stand-point, that the claimant retains the residual functional ability in each of these areas of functioning to re-enter the work force if so motivated. The SHO also finds that at age 52 the claimant still has the time to either re-enter the work force with the abilities that she currently possesses or to acquire skills and abilities that she heretofore has not acquired in order to make her reentry into the work force a success. In this regard, the SHO notes the claimant last worked in 1996 at the very young age of 42. Claimant has offered no evidence at hearing which would indicate any reasonable effort has been made on her behalf in the nearly 10 year interim to acquire skills and abilities that would assist her in re-employment. Pursuant to the Ohio Supreme Court case in B.F. Goodrich, 73 O.S.3d 525 (1995), the claimant has an affirmative obligation to take all reasonable steps to acquire those skills and abilities that she may be able to in order to re-enter the work force. The evidence in file fails to indicate that the claimant has made such a good faith effort at acquiring those skills and abilities.
 {¶ 24} Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 25} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse *Page 10 
of discretion and mandamus is not appropriate. State ex rel. Lewis v.Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v.Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 26} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 27} Relator raises two arguments in this mandamus action. First, relator contends that the commission abused its discretion by not considering the January 13, 2006 report of Dr. Farrell since that was the only contemporaneous medical report in the record related to relator's allowed psychological condition. Second, relator contends that the commission abused its discretion by not explaining why it relied upon the older report of Dr. Skillings when there was more recent medical evidence in the file related to relator's allowed psychological condition. For the reasons that follow, the magistrate finds that relator's arguments lack merit. *Page 11 
 {¶ 28} In Noll, the Supreme Court of Ohio stated that the commission is only required to state what evidence it relied upon and provide a brief explanation as to why the claimant is or is not entitled to the requested benefits. The commission is not required to list all the evidence considered or explain why it rejected certain medical evidence or why it found certain medical evidence to be more persuasive.
 {¶ 29} Relator cites the following paragraph from the Supreme Court of Ohio's decision in State ex rel. Fultz v. Indus. Comm. (1994),69 Ohio St.3d 327, in support of her argument:
 Neither the commission's rehabilitation report nor Riccio's vocational report is listed in the commission's order as being among the evidence the commission considered. While the commission correctly contends in essence that it need only enumerate the evidence relied on, the fact that the commission in listing the evidence considered omitted those two reports from that list, leads to only one conclusion — the commission either inadvertently or intentionally ignored that evidence. Because these reports could be the key to the success or failure of claimant's application, the cause must be returned to the commission for further consideration.
Id. at 329.
 {¶ 30} The Fultz case does not apply in the present case. InFultz, the hearing officer set forth the evidence which was considered in rendering a decision as to the claimant's entitlement to compensation. While the commission is not required to list all the evidence considered, the Fultz court stated that where the commission sets out to list all the evidence considered, and omits certain other evidence which had been properly submitted, a writ of mandamus must be issued because the omission of those reports from the list leads to the conclusion that the commission either inadvertently or intentionally ignored that evidence. *Page 12 
 {¶ 31} In the present case, the commission did not set out to identify all the evidence considered. Instead, the commission only cited the evidence upon which it relied in rendering its decision. As such, the commission's order complies with Noll and relator's first argument, that the commission did not consider Dr. Farrell's report, lacks merit.
 {¶ 32} Relator also contends that the commission abused its discretion both when it relied upon the older report of Dr. Skillings and when it further neglected to explain why it relied upon that report. Relator contends that the commission's failure to explain why it relied upon the report of Dr. Skillings violates Noll.
 {¶ 33} First, the magistrate finds that the report of Dr. Skillings does constitute some evidence upon which the commission could rely. Relator presented no evidence that her allowed psychological condition had worsened between the filing of her second and third applications for PTD compensation. In her third application, relator only asserted disability based upon her allowed physical conditions. In fact, based upon the stipulated evidence, the most recent report relator submitted concerning her allowed psychological condition was the November 2003 report of John Malinky, Ph.D. (see file review section of Dr. Farrell's report). Further, Dr. Farrell, who examined relator at the commission's request, concluded that relator's allowed psychological condition did not prevent her from returning to some work. Relator argues, however, that Dr. Farrell placed restrictions on her ability to work while Dr. Skillings did not. Upon review of their reports, the magistrate notes that both doctors identified similar symptoms including difficulties in social functioning and a tendency to over report her symptoms. Dr. Skillings assessed a 25 percent impairment and Dr. Farrell assessed a 30 percent *Page 13 
impairment. Both doctors identified her impairment as moderate. Relator points out that Dr. Farrell listed specific restrictions (moderate impairment in social functioning, cognitive functioning and endurance/pace, and mild impairment in stress tolerance). However, Dr. Skillings had also noted impairment in these areas (heightened sensitivity to social interactions, mild limitation in concentration — relator reported tension interference and recovered nicely, as well as diminished energy, stamina, pace and persistence). So, in essence, their reports are similar, yet they reached different conclusions. The "restrictions" noted by Dr. Farrell are not really "restrictions." Instead, he merely identified areas of impairment which were also addressed by Dr. Skillings. Further, as stated previously, the commission is not required to explain why it rejects certain evidence in favor of other evidence. In the present case, the commission identified the evidence upon which it relied and provided a brief explanation. Because Dr. Skillings' report was still valid, the commission did not abuse its discretion by relying upon it.
 {¶ 34} The SHO also specifically found further that relator had not pursued any vocational rehabilitation in the ten years since she had last worked. It is undisputed that the commission and courts can demand accountability of a claimant who, despite time and medical ability to do so, does not try to further their education or learn new skills. SeeState ex rel. Bowling v. Natl. Can Corp. (1996), 77 Ohio St.3d 148. Pursuant to State ex rel. B.F. Goodrich Co. v. Indus. Comm. (1995),73 Ohio St.3d 525, the commission may look not only to current abilities to be retrained, but, also, to capabilities which might be developed through retraining. This constitutes a separate, valid reason for the commission's denial of relator's PTD application. *Page 14 
 {¶ 35} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation and this court should deny relator's request for a writ of mandamus. *Page 1